LINDA D. VAUGHN v. NORTH CAROLINA DEPARTMENT OF HUMAN
RESOURCES

No. 91

(Filed 16 March 1979)

1. **Principal and Agent § 9— liability of principal for torts of agent—degree of control**

    Whenever the principal retains the right to control and direct the manner in which details of work are to be executed by his agent, the doctrine of respondeat superior operates to make the principal vicariously liable for the tortious acts committed by the agent within the scope of his employment. Conversely, a principal is not vicariously liable for the tortious acts of an agent who is not subject to the control and direction of the principal with respect to the details of the work and is subordinate only in effecting a result in accordance with the principal's wishes.

2. **State § 6— Tort Claims Act—foster home program—County Director of Social Services**

    A County Director of Social Services and his staff are agents of the Social Services Commission of the Department of Human Resources with respect to the placement of children in foster homes since the Social Services Commission has been given the right to control and direct the manner in which the County Director and his staff are to place children in foster homes. Therefore, the Department of Human Resources is liable under the doctrine of respondeat superior for the negligent acts of the County Director and his staff with respect to the placement of children in foster homes, and the Industrial Commission has jurisdiction under the Tort Claims Act of a claim based on such alleged negligence of the County Director and his staff.

ON defendant's petition for discretionary review of the decision of the Court of Appeals, 37 N.C. App. 86, 245 S.E. 2d 892 (1978), affirming the order of the North Carolina Industrial Commission entered 3 February 1977. This case was docketed and argued as No. 116 at the Fall Term 1978.

This is a claim against the Department of Human Resources which has not yet been heard on the merits. It was filed with the

North Carolina Industrial Commission pursuant to the provisions of the Tort Claims Act, G.S. 143-291. In her accompanying affidavit, claimant alleges that a foster child was negligently placed in her home by the Durham County Department of Social Services. The employees who placed the child in her home knew the child was a carrier of cytomegalo virus. The claimant had previously advised her caseworker that she was attempting to become pregnant; and subsequently, the claimant did become pregnant. While pregnant, the claimant was infected with cytomegalo virus. Upon advice of her physicians, the claimant was forced to abort her pregnancy because of the high risk of birth defects to the unborn child due to the cytomegalo virus. The abortion and its aftermath have resulted in great physical pain and mental anguish to the claimant.

Claimant named the County Director of Social Services, Mr. Thomas W. Hogan, and five of his caseworkers as the negligent employees. Counsel have stipulated that at the times complained of Thomas Hogan was the Director of the Durham County Department of Social Services; that either he or his predecessor in office was responsible for the hiring of the named caseworkers; that all of said individuals at the times complained of were employees of the Durham County Department of Social Services.

The Department of Human Resources moved to dismiss the claim for lack of jurisdiction, contending the Durham County Department of Social Services is not a State department and the Director and employees thereof are not State employees within the meaning of G.S. 143-291.

The motion came on for hearing before the Industrial Commission and, after finding facts, Commissioner Stephenson held that the Industrial Commission had jurisdiction to hear and determine this claim. On defendant's appeal Commissioner Stephenson's order was affirmed by the Full Commission and, on further appeal, by the Court of Appeals. We allowed defendant's petition for discretionary review.

*Powe, Porter, Alphin & Whichard, P.A., by Charles R. Holton and Willis P. Whichard for plaintiff appellee.*

*Rufus L. Edmisten, Attorney General, by William Woodward Webb and Ralf F. Haskell, Assistant Attorneys General, for the State.*

HUSKINS, Justice.

The sole question posed on this appeal is whether the North Carolina Industrial Commission has jurisdiction to hear and determine this claim.

Under The Tort Claims Act the North Carolina Industrial Commission (Commission) is "constituted a court for the purpose of hearing and passing upon tort claims against the . . . departments, institutions, and agencies of the State." G.S. 143-291. The Commission is authorized to determine "whether or not each individual claim arose as a result of a negligent act of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina." *Id.*

Claimant alleges that the Director of the Durham County Department of Social Services and his staff negligently placed in her home a foster child who was a carrier of cytomegalo virus with knowledge that claimant was attempting to become pregnant. Claimant subsequently became pregnant. While pregnant, claimant became infected with cytomegalo virus. Upon advice of her physician, claimant was forced to abort her pregnancy because of the high risk of birth defects to the unborn child due to the cytomegalo virus.

In order for the Commission to assert jurisdiction over this claim there must be a showing that the Director of the Durham County Department of Social Services and his staff were acting as the "involuntary servants or agents" of a "State Department" under circumstances in which the State, if a private person, would be liable for the negligent acts of the named servants or agents. G.S. 143-291. Claimant contends (1) that the Director of the Durham County Department of Social Services (County Director) and his staff act as agents for the Social Services Commission of the Department of Human Resources with respect to the placement of children in foster homes, and (2) that the degree of control exercised by the Social Services Commission over the manner in which the County Director is to administer the placement of children in foster homes requires imposition of liability on the State under the rule of respondeat superior for the negligent acts

of the County Director and his staff with respect to the placement of foster children.

Is the State liable for the negligent acts of the County Director and his staff with respect to the placement of children in foster homes? Application of the principles of agency law and respondeat superior to the statutory scheme for the delivery of foster care services leads us to conclude that liability may exist and that the Industrial Commission may therefore "hear and pass upon" the merits of this claim pursuant to the provisions of the Tort Claims Act.

[1] Whenever the principal retains the right "to control and direct the manner in which the details of the work are to be executed" by his agent, the doctrine of respondeat superior operates to make the principal vicariously liable for the tortious acts committed by the agent within the scope of his employment. *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137 (1944); *Harmon v. Contracting Co.*, 159 N.C. 22, 74 S.E. 632 (1912). *See also, Scott v. Lumber Co.*, 232 N.C. 162, 59 S.E. 2d 425 (1950). Conversely, a principal is not vicariously liable for the tortious acts of an agent who is not subject to the control and direction of the principal with respect to the details of the work and is subordinate only in *effecting a result* in accordance with the principal's wishes. *Harmon v. Contracting Co., supra. See generally*, Restatement (Second) of Agency § 2 (1957). In sum, a principal's vicarious liability for the torts of his agent depends on the degree of control retained by the principal over the details of the work as it is being performed. The controlling principle is that vicarious liability arises from the right of supervision and control. *Accord, Hayes v. Elon College, supra. See also*, 8 N.C. Index 3d, Master and Servant, § 3 and cases collected therein.

[2] Analysis of the statutory scheme adopted by the General Assembly for the delivery of foster care services indicates that the County Director of Social Services is the agent of the Social Services Commission of the Department of Human Resources with respect to the placement of children in foster homes and that the Social Services Commission is given the right to control and direct the manner in which the County Director is to place children in foster homes. Moreover, the conclusions we reach with respect to the status of the County Director as an agent of the

Department of Human Resources and with respect to the vicarious liability of the Department for the negligent acts of the County Director are equally applicable, under principles of sub-agency, to the five caseworkers named by claimant. See generally, W. Seavey, Law of Agency, § 7 (1964).

The County Director of Social Services is given the duty and responsibility "[t]o accept children for placement in foster homes and to supervise placement for so long as such children require foster home care." G.S. 108-19(15). However, the actions of the County Director with respect to the placement of children in foster homes must comply with the rules and regulations of the Social Services Commission, which has the "power and duty to establish standards and adopt rules and regulations: * * * * For the placement and supervision of dependent and delinquent children and payment of necessary costs of foster home care for needy and homeless children as provided by G.S. 108-66. * * * * For the inspection and licensing of child-care institutions as provided by G.S. 108-78." G.S. 143B-153(2)c and (3)c. See also G.S. 108-7 (Interim Supp. 1978).

Pursuant to this mandate the Social Services Commission has adopted comprehensive standards which detail the manner in which the County Director and his staff are to supervise the placement of children in foster homes and the role which the County Director and his staff are to play in the licensing of foster homes. See Manual—Welfare Programs Division, Volume I, Chapter IV, "Foster Care Services" (Plaintiff's Exhibit 2). These mandatory standards on foster care services instruct the County Director of Social Services on virtually all aspects of foster care. Among the topics covered by the standards are the following: (1) Under what circumstances should the County Director petition a court for the separation of a child from his natural parents? (2) In what manner should the natural parents be involved in the foster care process? (3) What constitutes a suitable foster home? (4) What type of medical care, clothing and nourishment must be provided for foster children? (5) How often and in what manner must each foster care case be evaluated? (6) How should judgments be formulated with respect to the duration of placement in a foster home?

The selection of a suitable foster home is obviously one of the keys to the successful placement of children in need of foster

care. Control over the manner in which this vital task is to be accomplished is vested in the State. G.S. 108-78(a) charges the Department of Human Resources with licensing and inspecting "child-caring institutions in the State under rules and regulations adopted by the Social Services Commission. . . ." In its regulations the Social Services Commission instructs the County Director of Social Services and his staff to inspect prospective foster homes under criteria established by the Commission. The County Director is to report his findings to the Department of Human Resources which decides whether to grant or renew the license as the case may be. Additionally, in its regulations the Social Services Commission specifies that the County Director may place children only in those foster homes which are licensed by the Department of Human Resources. Thus, the role of the County Director in the critical task of finding a suitable foster home is limited to conducting investigations for the Social Services Commission and, assuming there is a choice, to determining into which of several State-licensed foster homes a child will be placed.

The funding power of the Department of Human Resources in the field of foster care services also constitutes another source of State control over the manner in which the County Director and his staff administer the placement of children in foster homes. Pursuant to the provisions of the State Foster Home Fund, G.S. 108-66, a substantial percentage of the funding for the foster care programs administered by the County Director is provided by the Department of Human Resources in the form of reimbursement for funds expended by the county for the care of needy children who are placed in foster homes. Significantly, eligibility for reimbursement from the State Foster Home Fund is not conditioned solely on the financial need of the particular child being aided but also on the quality of foster care being provided by the county to the child. G.S. 108-66(a) authorizes reimbursement only when the needy child is placed in a foster home "in accordance with the rules and regulations of the Social Services Commission." Thus a county is not entitled to reimbursement for funds expended for a needy child unless it places the child in a foster home licensed by the Department of Human Resources as the rules and regulations of the Social Services Commission require that all foster children be placed in licensed homes. Similarly, in order to continue to receive reimbursement from the Foster

Home Fund a county must show that the foster care it is giving to the needy child complies with the comprehensive foster care standards promulgated by the Social Services Commission. Accordingly, every six months the county is required to submit reports to the Department of Human Resources on the following items:

"Dates of visits with the child and a description of the services he is receiving, his adjustment in the home, community and school, and any medical care received during the period.

The child's reaction to separation from his own family and the ways by which he maintains contact with them.

Date of interviews with the child's parents.

Description of the family's current situation. This includes the whereabouts of both parents, their attitude toward the child, their use of visiting rights, their efforts to improve the home situation and to plan for the child's return and any change in the family situation as it was described six months ago and the amount and source of income to the family — including employment history of the parents.

If the parents were not living together at the time of placement, description of what has been done to involve the absent parent.

Relatives contacted by the agency in an effort to interest them in the child's welfare.

Services which have been offered to the child's family since the child was removed from the home.

What specific and more permanent plan of care, other than continuing foster care, has been discussed with the parents and/or relatives? What is their attitude toward the plan?

If the child has been released for adoption, what steps have been taken to place the child in a suitable adoptive home?

Is the agency recommending continued foster care as the best possible plan of care at this time? Give reasons for this recommendation." Manual — Welfare Programs Division, supra.

If the county does not provide satisfactory answers to these questions further reimbursement could be denied and the county would be forced to turn to other revenue sources to cover the expenditures it had made for the needy child. It is evident, then, that the funding power of the Department of Human Resources in the field of foster care services is utilized to control the manner in which the County Director and his staff are to supervise the placement of children in foster homes.

Significantly, G.S. 108-19(5) provides that the County Director of Social Services is "[t]o act as *agent* of the Social Services Commission in relation to *work required* by the Social Services Commission in the county." (Emphasis added.) The rules and regulations adopted by the Social Services Commission with respect to the placement of children in foster homes specify part of the "work required by the Social Services Commission in the county." Thus, in defining the duties of the County Director of Social Services the General Assembly envisaged that he would be the agent responsible for executing whatever work was required by the Social Services Commission in his county. The nomenclature utilized by the General Assembly accurately describes the role played by the County Director in the delivery of foster care services. This statutory scheme gives the Department of Human Resources, through the Social Services Commission, control over the delivery of foster care services and designates the County Director as the person responsible for carrying out the policies formulated by the Department. Thus, in practice, as well as in name, the role of the County Director in the delivery of foster care services is that of an agent. Like the agent, the County Director acts on behalf of the Department of Human Resources and is subject to its control with respect to the actions he takes on its behalf. *See* W. Seavey, Law of Agency, § 3, p. 4 (1964).

Review of the statutory scheme for the delivery of foster care services indicates that the County Director of Social Services is the agent of the Social Services Commission with respect thereto and that the Department of Human Resources through the Social Services Commission has the right to control the manner in which the County Director of Social Services and his staff are to place children in foster homes. We therefore hold that the Department of Human Resources is liable under the rule of

respondeat superior for the negligent acts of the County Director
of Social Services with respect to the placement of children in
foster homes. It follows therefore that the Industrial Commission
has jurisdiction under the Tort Claims Act to determine whether
claimant's injuries arose as a result of a negligent act of the Coun-
ty Director of Social Services or his staff while acting within the
scope of their obligation to place children in foster homes.

In concluding that the Social Services Commission has the
right to control the acts of the County Director with respect to
the placement of children in foster homes, we are cognizant of the
fact that the Social Services Commission does not have the
exclusive power to hire, discharge, or compensate the County
Director. Those powers are vested in the County Board of Social
Services. See G.S. 108-17 and 108-18. The members of the County
Board of Social Services are appointed in part by the Social Serv-
ices Commission. See G.S. 108-9. It is fair to say, then, that
through its minority representation on the County Board of Social
Services the Social Services Commission exercises some influence
in the hiring, discharge and compensation of the County Director.
We note, however, that exclusive power over the hiring,
discharge, and compensation of an agent is not a prerequisite to a
finding that the right of control exists; rather, it is one of many
circumstances to be considered in determining whether the prin-
cipal has the right to control the acts of his agents. *See Standard
Oil Co. v. Anderson,* 212 U.S. 215, 53 L.Ed. 480, 29 S.Ct. 252
(1909). Thus, lack of power over hiring, discharge, and compensa-
tion does not preclude a finding of control where, as in this case,
other circumstances support such finding. *See Hayes v. Elon Col-
lege, supra.*

The case of *Turner v. Board of Education,* 250 N.C. 456, 109
S.E. 2d 211 (1959), cited by defendant as dispositive of this appeal,
is factually distinguishable. In *Turner* this Court held that the
State Board of Education was not vicariously liable for the negli-
gent acts of a lawn mower operator employed by the Gastonia
City Board of Education. The holding in *Turner* is premised
on a finding that the State Board did not have the right to con-
trol the actions of the lawn mower operator. The facts in this
case, unlike those in *Turner,* warrant a finding that the Depart-
ment of Human Resources has the right to control the actions

of the County Director of Social Services with respect to the placement of children in foster homes.

In this case we hold only that the Department of Human Resources is liable for the negligent acts of its agents, the Durham County Director of Social Services and his subordinates, with respect to the placement of children in foster homes. Our holding is narrowly premised on the ground that the Department of Human Resources through the Social Services Commission has the right to control the manner in which the County Director is to execute his obligation to place children in foster homes. We express no opinion on whether the Department of Human Resources might also be liable for. negligent acts of the County Director outside the scope of his obligation to place children in foster homes. In every instance the liability of the Department of Human Resources depends upon application of the principles of agency and respondeat superior to the facts in the case under consideration. *See Snow v. DeButts*, 212 N.C. 120, 193 S.E. 224 (1937).

Defendant has excepted to the findings of fact made by the Industrial Commission. Since the facts found by the Commission are jurisdictional they are not binding on this Court. *See, e.g., Hicks v. Guilford County*, 267 N.C. 364, 148 S.E. 2d 240 (1966); *Askew v. Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280 (1965). Nonetheless, all the findings made by the Industrial Commission, save one, are supported by competent evidence. The Commission found that the Durham County Board of Social Services consisted of three members. Contrary to this finding the record indicates that the actual number of board members is five. However, since jurisdiction in this case does not turn on the composition of the Durham County Board of Social Services, we conclude that the Commission's error was harmless. Defendant's exceptions to the Commission's findings of fact are overruled.

For the reasons stated the decision of the Court of Appeals is

Affirmed.