DERRICK MILLER, JR., BY HIS GUARDIAN AD LITEM, ALLEN BAILEY; CHARMA MILLER; AND DERRICK MILLER, SR., PLAINTIFFS v. PIEDMONT STEAM COMPANY, INC., D/B/A STANLEY STEEMER; STANLEY STEEMER INTERNATIONAL, INC.; AND JOHN STEVEN SPERO, DEFENDANTS

No. COA99-440

(Filed 18 April 2000)

**Agency— automobile accident—personal injury action—franchise agreement—no evidence of control**

In an action to recover damages for personal injuries sustained by a six-year-old pedestrian struck by a van owned by defendant-franchisee Piedmont Steam Company, Inc., the trial court did not err in granting summary judgment in favor of defendant-franchisor Stanley Steemer International, Inc., on the issue of the franchisor not being liable for the torts of its franchisee on an actual agency theory, because: (1) the franchise agreement only provided general standards regarding the attire and appearance of the franchisee's employees and the condition of its equipment, and a general duty to maintain the premises in a "clean, attractive, safe and orderly manner"; (2) the franchisor did not retain or exercise detailed control over the daily operations since its involvement in the franchisee's operations functioned largely to ensure uniform service and public good will toward the corporation; (3) the franchisor did not retain control over the hiring, firing, or supervision of the franchisee's personnel; (4) the franchisor's remedies in the event of a breach of the franchise agreement were limited; (5) the franchisor could obtain adequate insurance if the franchisee failed to do so, and no agency relationship arises when one party requires another to maintain liability insurance; (6) the franchisor did not maintain control over the operators of the franchisee's vehicles or the manner in which they operated vehicles owned by the franchisee and registered in its name; and (7) the fact that the parties formally agreed that the franchisee was an independent contractor and not an agent of the franchisor is an indicia of the parties' intent that no agency relationship be formed.

Appeal by plaintiffs from judgment entered 14 January 1999 by Judge L. Oliver Noble in Superior Court, Mecklenburg County. Heard in the Court of Appeals 12 January 2000.

## MILLER v. PIEDMONT STEAM CO.

[137 N.C. App. 520 (2000)]

*Twiggs, Abrams, Strickland, & Trehy, P.A., by Donald R. Strickland and Karen M. Rabenau, for plaintiffs-appellants.*

*Cranfill, Sumner, & Hartzog, L.L.P., by Stephanie Hutchins Autry and Samuel H. Poole, Jr., for defendant-appellee.*

TIMMONS-GOODSON, Judge.

D.J. Miller ("D.J."), a six year-old pedestrian, suffered severe brain injury when struck by a van as he attempted to cross Archdale Drive in Charlotte, North Carolina. The van was owned by Piedmont Steam Company, Inc., d/b/a Stanley Steemer ("Piedmont"), and was driven by John Steven Spero ("Spero"), an employee of Piedmont.

Piedmont became a franchisee of Stanley Steemer International, Inc. ("Steemer") in 1977. The twenty-one page Franchise Agreement ("the Agreement") between Piedmont and Steemer "[set] forth the contract terms and conditions for [Piedmont's] ownership and right to operate a [Steemer] carpet and upholstery cleaning business." Under the terms of the Agreement, Piedmont was required to purchase one carpet cleaner from Steemer, use Steemer approved replacement parts and cleaning products, and obtain Steemer approval of the appearance of the trucks used in the business and of all advertising. Additionally, the Agreement required Piedmont to keep its books and records according to Steemer guidelines, and make monthly sales reports to Steemer on Steemer supplied forms. The Agreement allowed record and tax return inspection by Steemer, and Steemer inspection of machines and equipment. Furthermore, Piedmont was obligated to carry a specified level of liability insurance coverage with a carrier approved by Steemer under the Agreement. If Piedmont failed to carry adequate insurance, Steemer reserved the right to obtain such insurance.

Article XIV of the Agreement stated:

Franchisee [Piedmont] acknowledges that he is an independent contractor and as such may not act as an agent, employee or representative of [Steemer], or attempt to bind or obligate [Steemer] in any manner. [Steemer] similarly agrees that it may not bind or act for Franchisee.

Under the Agreement, if Piedmont failed to comply with substantial provisions, Steemer had the option to terminate the Agreement or to terminate Piedmont's exclusivity.

In addition to the Agreement, the Franchise Operations Manual ("the Manual"), which was referred to in the Agreement, set forth "Prescribed Standards for Franchise Operations." The Manual contained detailed standards regarding hours of operation, uniforms, equipment and supplies, prescribing even the length and color of hair of Piedmont employees.

D.J., through his guardian ad litem and his parents (collectively "plaintiffs"), brought a motor vehicular negligence action against Spero, Piedmont, and Steemer (collectively, "defendants") to recover damages for the personal injuries D.J. sustained. The complaint alleged that Spero was negligent in his operation of the van and that Spero's negligence was imputed to Piedmont and Steemer based on principles of *respondeat superior* and agency.

Defendants answered, denying the material allegations contained in the complaint. Following discovery, Steemer filed a motion for summary judgment. Plaintiffs filed a partial summary judgment motion on the issue of Steemer's vicarious liability for the alleged negligence of Steemer and Spero. During oral argument on the summary judgment motions, plaintiffs withdrew their motion for partial summary judgment on the grounds the affidavits offered by Steemer created genuine issues of material fact.

At the hearing on its motion for summary judgment, Steemer attempted to establish that it did not exercise the necessary degree of control over Piedmont so as to establish an actual agency relationship. In support of the motion, Steemer submitted a host of documents including the affidavits and depositions of Philip R. Ryser, Executive Vice-President, Secretary and General Counsel of Steemer, and Steven W. Rohletter, President of Piedmont, to show that Steemer did not control the management, operation, or day-to-day business activity of Piedmont. While Steemer conceded that it issued many directives regarding Piedmont's business operation which amounted to a measure of control, Steemer argued that this control did not reach the bar set by the North Carolina courts. Steemer also argued that the plain language of the Agreement clearly defined its relationship with Piedmont as one of non-agency.

In opposition to Steemer's summary judgment motion, plaintiffs submitted that genuine issues of material fact were presented by the Agreement, the manuals, the mandatory prescribed standards, and the deposition testimony of Ryser and Rohletter. Plaintiffs argued that on the issue of the degree of Steemer's control over Piedmont's

**MILLER v. PIEDMONT STEAM CO.**

[137 N.C. App. 520 (2000)]

operations, the Ryser and Rohletter affidavits were in direct conflict with the deposition testimony offered by the two officers.

In their identical affidavits, Ryser and Rohletter stated that Steemer "had no control over, or authority to direct, the upkeep, maintenance, use or operation of the 1994 ford van." In his deposition, Rohletter conceded that Steemer had a right of control over the trucks used in its business. Ryser and Rohletter stated in their affidavits that "[Piedmont] alone maintains complete control over all personnel decisions involving its employees[.]" In his deposition, Rohletter agreed that Steemer had a right of control over the uniforms and general appearance of Piedmont employees. Ryser and Rohletter asserted in their affidavits that "[Steemer] has no control over the management, operation or the day-to-day activities of [Piedmont]." In his deposition, Ryser testified:

Q: . . . Has it been your experience that [Piedmont] follows the directives or the requirements set forth in the franchise agreement between [Piedmont] and [Steemer]?

A: To my knowledge, yes.

Q: . . . [H]as it been your experience that [Piedmont] does what it is asked to do or required to do by [Steemer]?

A: To the best of my knowledge, yes.

The trial court entered an order granting Steemer's motion for summary judgment. Plaintiffs appeal.

------

Plaintiffs' sole argument on appeal is that the trial court erred in granting Steemer's motion for summary judgment where material questions of fact existed as to whether there was an actual agency relationship between Steemer and Piedmont. We cannot agree.

Summary judgment is proper where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999). In determining whether summary judgment is proper, the trial court must view the evidence in the light most favorable to the non-moving party, giving the non-moving party the benefit of all reasonable inferences. *Coats v. Jones*, 63 N.C. App. 151, 303 S.E.2d 655, *aff'd*, 309 N.C. 815, 309 S.E.2d 253 (1983). The burden to establish the nonexistence of any triable issue of fact rests on the moving party. *Oliver v. Roberts*, 49 N.C.

App. 311, 271 S.E.2d 399 (1980), *cert. denied,* —— N.C. ——, 276 S.E.2d 283 (1981).

A franchisor is vicariously liable for the tortious acts of its franchisee when an agency relationship exists and the acts are committed within the scope of the agent's authority. *Vaughn v. Dept. of Human Resources,* 296 N.C. 683, 252 S.E.2d 792 (1979). Agency arises when parties manifest consent that one shall act on behalf of the other and subject to his control. *Hayman v. Ramada Inn, Inc.,* 86 N.C. App. 274, 357 S.E.2d 394, *disc. review denied,* 320 N.C. 631, 360 S.E.2d 87 (1987).

> [A] principal's vicarious liability for the torts of his agent depends on the degree of control retained by the principal over the details of the work as it is being performed. The controlling principle is that vicarious liability arises from the right of supervision and control.

*Vaughn,* 296 N.C. at 686, 252 S.E.2d at 795.

Both parties rely on *Hayman,* and we agree that *Hayman* is controlling in the case at bar as it addresses the issue of whether a franchisor may be held liable for the torts of its franchisee on an actual agency theory. In *Hayman,* a patron of the Ramada Inn was assaulted while staying at the hotel and brought suit against Ramada Inn, Inc. This Court affirmed summary judgment in favor of Ramada Inn, Inc., holding that no actual agency relationship existed between Ramada Inn, Inc., the franchisor, and Turnpike Properties, the franchisee. Noting that the general purpose of the franchise agreement was "the maintenance of uniform service within, and public good will toward, the Ramada Inn System[,]" this Court found no evidence that the franchisor exercised detailed control over day-to-day operations of the hotel. *Hayman,* 86 N.C. App. at 278, 357 S.E.2d at 397.

The franchise agreement in *Hayman* was a twenty-page document which required the franchisee to comply with certain standards in constructing, furnishing, and advertising the hotel. The franchisee was also required to maintain the premises in a "clean, attractive, safe and orderly manner," *id.,* and the franchisor retained the right to make inspections of the hotel to ensure compliance with the parties' agreement.

However, the franchisor in *Hayman* retained no authority over the hiring, firing, supervision, or discipline of personnel. Moreover, the franchisor's remedy for any breach was limited to termination of

the franchise agreement. The *Hayman* court noted that while the plaintiff alleged that Ramada Inn, Inc. was negligent in failing to provide adequate security for hotel patrons, the franchisor maintained no control over the security of the premises.

In the present case, the parties entered into a twenty-one page franchise agreement. Under the Agreement, Steemer, like the *Hayman* franchisor, was authorized to make periodic inspections of Piedmont and its records. Steemer prescribed standards regarding the attire and appearance of Piedmont's employees and the condition of its equipment. Although Steemer's standards were detailed, prescribing even the length and hair color of Piedmont employees, they served the same purpose as the *Hayman* provision requiring the franchisee to maintain the premises in a "clean, attractive, safe and orderly manner."

While Steemer required Piedmont to purchase one carpet cleaning machine from it and to use spare parts that met Steemer specifications for quality, we hold that these provisions did not rise to the level of daily control over Piedmont operations. As in *Hayman*, Steemer's involvement in the operations of Piedmont functioned largely to ensure uniform service and public good will toward the corporation, and did not, therefore, give rise to an agency relationship.

Like the *Hayman* franchisor, Steemer retained no control over the hiring, firing, or supervision of Piedmont personnel. Steemer's remedies in the event of a breach of the Agreement were limited. Steemer could either terminate the Agreement or terminate Piedmont's exclusivity in the event that Piedmont failed to comply with "any of the substantial provisions." The remedies available to Steemer did not allow it to interfere in the day-to-day operations of Piedmont with the minor exception that Steemer could obtain adequate insurance if Piedmont failed to do so. We note that no agency relationship arises when one party requires another to maintain liability insurance. *Id.* at 279-80, 357 S.E.2d at 398.

Just as the plaintiff in *Hayman* alleged that her injuries arose from a lack of adequate security, plaintiffs in the present case allege that D.J.'s injuries arose from negligent operation of a motor vehicle. However, Steemer did not train or test the drivers employed by Piedmont, nor did it require that the drivers have a good driving record or meet any other standards. We conclude that Steemer did not maintain control over the operators of the Piedmont vehicles or

ASSOCIATES FIN. SERVS. OF AM. v. N.C. FARM BUREAU MUT. INS. CO.

[137 N.C. App. 526 (2000)]

the manner in which they operated vehicles owned by Piedmont and registered in its name.

We hold that plaintiffs failed to establish any material fact tending to prove the existence of an agency relationship between Steemer and Piedmont. While Steemer conceded and the depositions of Ryser and Rohletter establish that Steemer had a measure of control over Piedmont operations, this control was not sufficient to establish an agency relationship as a matter of law. We are aware of precedent stating that the power to hire and fire employees is only one factor to consider in determining whether an agency relationship exists. *Vaughn*, 296 N.C. at 691, 252 S.E.2d at 798. As such, we have examined the circumstances in their entirety for material facts which support a finding of control and therefore agency. Similarly, we note that the language of the contract is not necessarily controlling. Nonetheless, the fact that the parties formally agreed that Piedmont was an independent contractor and not an agent of Steemer is an indicia of the parties' intent that no agency relationship be formed.

For the reasons stated herein, we conclude that there are no genuine issues of material fact regarding Steemer's liability for the alleged negligence of Spero based on principles of agency. As such, the judgment of the trial court granting summary judgment for Steemer is affirmed.

Affirm.

Judges MARTIN and HORTON concur.