JILL WOMBLE WOOD, PLAINTIFF v. McDONALD'S CORPORATION, JOHNNY LYNN TART, JOHNNY TART ENTERPRISES, INC., AND T & T MANAGEMENT CORPORATION, DEFENDANTS

No. COA03-953

(Filed 7 September 2004)

## 1. Appeal and Error— appealability—partial summary judgment

A substantial right was not affected by the denial of partial summary judgment for defendant T&T on the issues of negligence and contributory negligence in a slip and fall case. Defendants may still prevail before the jury and the appeal was dismissed as interlocutory.

**WOOD v. McDONALD'S CORP.**

[166 N.C. App. 48 (2004)]

**2. Appeal and Error— appealability—denial of summary judgment—law of the case—substantial right exception—injury requirement**

An appeal was dismissed as interlocutory where it was from the denial of summary judgment without review on the merits, based on a finding that a ruling by a prior judge was the law of the case. The substantial right exception requires both a substantial right and injury from deprivation of that right; here, there was no showing of different evidence had there been any further hearing on the issue.

**3. Premises Liability— slip and fall—restaurant franchise—multi-tiered corporate structure—agency—issue of fact**

The trial court erred by granting summary judgment for a restaurant management company in a slip and fall action at a McDonald's restaurant where the evidence raised an issue as to daily control and agency.

**4. Joint Venture— summary judgment—control of conduct—sharing of profits**

The trial court correctly granted summary judgment for the individual defendant on a joint venture claim in a slip and fall case where there was no forecast of evidence (1) that defendant corporations had the legal right to control the conduct of the individual defendant in running the restaurant where the slip and fall occurred, and (2) that the individual defendant and the corporate defendants shared in the profits from the restaurant.

**5. Corporations— piercing the corporate veil—summary judgment for individual defendant**

The trial court correctly granted summary judgment for the individual defendant on a piercing the corporate veil claim in a restaurant slip and fall case. Although the individual defendant formed all of the involved corporations, the corporate formalities were observed with care, each corporation has some insurance coverage, and defendant gave clear notice of the corporation he believed was the proper defendant from his first answer.

Appeal by plaintiff and cross-appealed by defendants from an order entered 12 March 2003 by Judge Peter McHugh in Guilford County Superior Court. Heard in the Court of Appeals 22 April 2004.

*Smith, James, Rowlett & Cohen, L.L.P., by J. David James; Greeson Law Offices, by Harold F. Greeson; and Bell, Davis & Pitt, P.A., by Stephen M. Russell, for plaintiff appellant-appellee.*

*Smith Moore L.L.P., by Stephen P. Millikin, Richard A. Coughlin, and Lisa K. Shortt, for defendant appellants-appellees.*

McCULLOUGH, Judge.

The issues in this appeal arise from the following undisputed facts: On 4 January 1998, plaintiff went to a McDonald's restaurant (the "restaurant") located in Greensboro, North Carolina. She and her husband were on their way to a matinee movie. Plaintiff's husband remained in the car while she entered the restaurant to purchase a cup of coffee. She entered by way of a single door in the rear of the restaurant and walked towards the front counter. To her left, plaintiff noticed an employee sweeping debris on the floor near the restaurant's side double-door entrance. Plaintiff veered slightly to the right to avoid stepping into any of the debris, and walked to the front of the counter without incident.

After being served her coffee, plaintiff turned to the condiment counter to get cream and sweetener. Finding there to be only cream, which she there added, she returned to the serving counter to get sweetener. Plaintiff was given sweetener, added it, placed a lid on the coffee, and then turned to leave.

She had intended to exit by means of the double doors on the side of the restaurant. She turned to her right from the counter and faced the double doors, but saw that the employee had swept the pile of debris in front of those doors. Plaintiff decided that she would exit from the rear door, by which she had entered, to avoid the debris. With her eyes on the debris so as not to step in it, she rounded the corner of the serving counter. Plaintiff's right foot suddenly shot out from under her and she fell to the floor landing on her back and right elbow. She immediately felt pain in her elbow, and then hot scalding pain as the coffee cup burst onto her stomach.

She lay there for a moment in pain, and saw the employee that had been sweeping the floor looking at her. He dropped his broom and walked past her. She got up and made her way to the serving counter where she spoke to the employee that had served her

coffee, and told him what happened. He offered her another cup of coffee. Plaintiff left the store and ran to her car to tell her husband what happened.

Plaintiff's husband went back in the store to get plaintiff napkins to wipe off the coffee. He entered by the back door. Taking the same route to the counter his wife had taken, he saw the coffee spill. Nearby he saw a dirty, floor-colored french fry. The lone, half-mashed french fry was approximately five feet from the principal pile of debris that was blocking the side double doors. He proceeded to the counter and spoke with the manager. He then took the manager to the scene of the accident, and showed her the spot where the french fry remained with what he believed to be his wife's heel print in it.

Plaintiff's husband returned to the car and took her to the hospital where she arrived at approximately 4:00 p.m. On the day of the incident, X-rays showed no fracture. However, it was later determined that she had in fact fractured her elbow, and had median nerve damage. She contracted reflex sympathetic dystrophy.

The McDonald's restaurant in question was purchased outright from McDonald's Corporation by defendant Johnny Tart ("Mr. Tart") on 2 January 1997. He then assigned his ownership to T & T Management Corporation ("T & T").

Mr. Tart had formed T & T on 24 January 1994 for the purpose of assigning McDonald's franchises to the corporation. T & T was a C corporation, and owned everything but the building and land of franchises it was assigned (it owned the cookers, fryers, freezer, etc.). He formed two other C corporations for this same purpose: Tracor, Inc., was formed on 13 July 1994; and Kayln Corporation was formed on 8 March 1995. Additionally, on 3 July 1995, Mr. Taft formed Johnny Tart Enterprises, Inc. ("JT Enterprises"), an S corporation. He formed JT Enterprises for the purpose of charging a fee to his three C corporations for providing administrative services so that these fees would not be taxed as income to the C corporations and instead deductible as business expenses. JT Enterprises and T & T, by signature of Mr. Tart as president of each, entered into a Management Services Agreement ("MSA").

On 25 July 2000, plaintiff filed her complaint against McDonald's Corporation, Kayln Corporation, Mr. Tart individually, and JT Enterprises, alleging she was injured due to their negligence in her slip and fall on 4 January 1998. In their answers, all defendants named

**WOOD v. McDONALD'S CORP.**

[166 N.C. App. 48 (2004)]

T & T as the owner and operator of the McDonald's where the incident occurred. On 30 May 2001, plaintiff filed a motion to amend the complaint to add T & T as an additional defendant. By order of Judge William Z. Wood, Jr., dated 5 September 2001, plaintiff's motion to amend was allowed. Additionally, Judge Wood ordered the following:

> [T]he party being added as a party defendant, this being T & T Management Corporation, may plead and assert a statute of limitations defense as to all claims asserted and alleged against T & T Management Corporation, as may the other defendants, and an issue shall be presented to the jury at the trial of this case as to whether an agreement was or was not made for plaintiff and counsel for T & T Management Corporation and defendants that plaintiff could wait until after proposed depositions were taken in this action in April, 2001, to join T & T Management Corporation as a party defendant and to allege and assert claims against T & T Management Corporation by an Amended Complaint. If the jury should answer this issue "No," then the claims alleged and asserted by plaintiff against T & T Management Corporation would be and are barred as a matter of law. If the jury should answer this issue "Yes," that there was such an agreement, then the claims against T&T would not be barred as a matter of law.

Defendants filed a motion appealing Judge Wood's order. We dismissed the appeal as interlocutory on 28 January 2002.

An amended complaint naming T & T as an additional defendant, and dropping Kayln Corporation, was filed 21 September 2001. On 24 January 2003, plaintiff filed a voluntary dismissal without prejudice as to defendant McDonald's.

Defendants filed motions for summary judgment in May and June of 2002. These motions where heard by Judge McHugh on 27 January 2003. In an order filed 12 March 2003, Judge McHugh found that plaintiff had forecast evidence that a restaurant employee either created or had notice of the alleged hazardous condition that caused plaintiff's fall and therefore denied defendants' motions for summary judgment on that ground. The trial court also denied defendants' motion for summary judgment based upon the claim that plaintiff's own evidence showed that she had been contributorily negligent as a matter of law. The trial court did grant summary judgment to Mr. Tart and JT Enterprises. Lastly, the trial court ordered the following:

The Motion for Summary Judgment of T & T Management Corporation be and it is hereby denied for the reasons that the court finds and determines that the Order of Judge Wood of September 5, 2001, on Plaintiff's Motion to Amend under Rule 15 precludes this court from considering the Motion for Summary Judgment under Rule 56 of T & T Management Corporation on its merits, and the court has not done so for the reason that the Order of Judge Wood is the law of the case.

The trial court found that pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) of the North Carolina Rules of Civil Procedure, there was no just reason to delay entering final judgment as to the dismissal of Mr. Tart and JT Enterprises. Both plaintiff and defendants filed notices of appeal.

In this appeal plaintiff argues that the trial court erred in granting summary judgment in favor of JT Enterprises and Mr. Tart because they are liable under various theories of agency and corporate law. Pursuant to Rule 10(d) of the North Carolina Rules of Appellate Procedure, without appeal, defendants cross-assigned as error the basis in law used by the lower court in granting summary judgment in favor of Mr. Tart and JT Enterprises.

In addition defendants argue in their appeal that the trial court erred in denying summary judgment on the claims of defendants' negligence and on their contention that plaintiff's own evidence showed she was contributory negligent. Furthermore, defendants raised the issue that Judge Wood's 5 September 2001 order was not the law of the case governing the trial court, and the trial court should have considered T & T's motion for summary judgment pursuant to Rule 56(b).

As a threshold matter, we hold that those issues raised by defendants' cross-appeal and appeal, are interlocutory and improperly before this Court. We then address the merits of plaintiff's two issues on appeal.

## Interlocutory Orders

[1] "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993). "The reason for this rule is to prevent fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is

presented to the appellate courts." *Fraser v. Di Santi*, 75 N.C. App. 654, 655, 331 S.E.2d 217, 218, *disc. review denied*, 315 N.C. 183, 337 S.E.2d 856 (1985)."[I]n two instances a party is permitted to appeal interlocutory orders[.]" *Liggett Group*, 113 N.C. App. at 23, 437 S.E.2d at 677. First, a party is permitted to appeal from an interlocutory order when the trial court enters "a final judgment as to one or more but fewer than all of the claims or parties" and the trial court certifies in the judgment that there is no just reason to delay the appeal of those claims. N.C. Gen. Stat. § 1A-1, Rule 54(b); *Liggett Group*, 113 N.C. App. at 23, 437 S.E.2d at 677. Second, a party is permitted to appeal from an interlocutory order when "the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Southern Uniform Rentals v. Iowa Nat'l Mutual Ins. Co.*, 90 N.C. App. 738, 740, 370 S.E.2d 76, 78 (1988); N.C. Gen. Stat. § 1-277 (2003). Under either of these two circumstances, it is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal and our Court's responsibility to review those grounds.

Defendants cross-assign as error that part of the 12 March 2003 order which denied summary judgment as to them. The gravamen of defendants' cross-appeal and appeal is twofold. First, defendants contend that the trial court erred in finding an issue of material fact as to whether defendant was negligent and whether plaintiff was contributorily negligent. Second, defendant T & T claims it was denied a substantial right by Judge Wood's 5 September 2001 order granting the motion to amend adding T & T, as that order precluded T & T from later motioning for summary judgment on statute of limitations grounds. Neither of these are properly before this Court.

*I. Negligence and Contributory Negligence*

The law is clear that a trial court's determination that there is an issue of fact of negligence or contributory negligence is interlocutory. *See* N.C. Gen. Stat. § 1A-1, Rule 54(b). It has long been held that " '[l]ike negligence, contributory negligence is rarely appropriate for summary judgment.' " *Bostic Packaging, Inc. v. City of Monroe*, 149 N.C. App. 825, 830, 562 S.E.2d 75, 79, *disc. review denied*, 355 N.C. 747, 565 S.E.2d 192 (2002) (quoting *Ballenger v. Crowell*, 38 N.C. App. 50, 55, 247 S.E.2d 287, 291 (1978)). Nor has a substantial right been affected by allowing negligence or contributory claims to survive summary judgment because defendants may still prevail on either of these issues before a jury.

## II.  Denial of Summary Judgment without Review of the Merits

[2] We next to turn to the more difficult issue: Whether Judge McHugh's interlocutory order, applying the law of the case of Judge Wood's order and denying T & T's motion for summary judgment on statute of limitations grounds without addressing the merits, is now reviewable. There is some issue as to whether Judge McHugh was bound by Judge Wood's order, as that hearing was held on a motion to amend plaintiff's complaint to add T & T and was not before the court for summary judgment review. T & T was not yet a party to this action until the order to amend was filed and plaintiff's complaint filed on 21 September 2001. However, without considering whether Judge McHugh was in fact bound by Judge Wood's order in regard to T & T's ability to raise the statute of limitations by motion for a summary judgment, we apply the "substantial rights" test to determine whether the denial of summary judgment to T & T, without reviewing the merits of the motion, affected such a right.

Whether a party may appeal an interlocutory order pursuant to the substantial right exception is determined by a two-step test. *Miller v. Swann Plantation Development Co.*, 101 N.C. App. 394, 395, 399 S.E.2d 137, 138 (1991). "[T]he right itself must be substantial and the deprivation of that substantial right must potentially work injury to plaintiff if not corrected before appeal from final judgment." *Goldston v. American Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990). The substantial right test is "more easily stated than applied." *Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978). And such a determination "usually depends on the facts and circumstances of each case and the procedural context of the orders appealed from." *Estrada v. Jaques*, 70 N.C. App. 627, 642, 321 S.E.2d 240, 250 (1984). Because we hold that defendant T & T was not "injured" by Judge McHugh's order denying their motion for summary judgment without review of the merits, we need not address the first prong of the test.

The facts and circumstances of this case show the following: At issue during the motion to amend hearing was whether T & T could be added as a party when the statute of limitations on any claim plaintiff might have against T & T had run. This was the same issue that T & T sought to have Judge McHugh review in their summary judgment motion. Plaintiff claimed that the attorney for then named defendants and unnamed T & T had waived the statute of limitations by stating, in correspondence, that plaintiff could take depositions before amending their complaint to add T & T. Additionally, plaintiff

**WOOD v. McDONALD'S CORP.**

[166 N.C. App. 48 (2004)]

argued that T & T was estopped from raising the statute of limitations as a bar to the court's jurisdiction. At the hearing, the attorney that was representing the named defendants for the motion to amend was also representing unnamed T & T.[1] The court asked:

> THE COURT: Why was Mr. Millikin representing T & T as well as the other parties?

> [DEFENDANT'S ATTORNEY]: I don't think that is clear. In all honesty, I do not know the answer to that, given that there is the same insurance carrier involved. I suspect that is the case, just out of complete candor to the Court, but I don't know if that was represented or not. Perhaps it was.

The entire hearing was centered around the actions of T & T, as represented by their attorney and whether these actions waived the statute of limitations or created equitable rights in plaintiff. Because plaintiff filed a verified brief for this motion alleging waiver and equitable estoppel, the court recessed to allow T & T's attorney to file an affidavit to raise an issue of fact. The court reasoned:

> THE COURT: [T]his is a little unusual because we've got a brief that's been verified. I guess any pleading can be verified, just like a brief, and treat it like an affidavit, I guess, for a summary judgment.

> ****

> THE COURT: I think if I'm going to treat it as an affidavit, I better treat an affidavit as an affidavit. Both sides deserve the same. Can [T & T attorney] get it back by Thursday or do you want to do it some other week? I've got three weeks of civil court.

It is clear that Judge Wood treated this as a hearing for summary judgment on the issues of waiver and equitable estoppel. Pursuant to his attempt to correctly posture the case, he allowed T & T's attorney to submit an affidavit while recessing the court. In response to plaintiff's supposition that, if T & T's affidavit did not raise a disputed fact, the court should rule on waiver and estoppel as a matter of law, Judge Wood stated:

> I know; I know. It may still go on. I understand that. But I just want to see if it's undisputed or not at this stage. I think that needs to be decided before we go any further.

---

1. The attorney for defendants was not present for the first day of the motion to amend hearing before Judge Wood as he was being treated for a medical condition. A fellow attorney from his firm represented the interests of defendants.

In the rehearing after T & T's attorney's affidavit was submitted, Judge Wood found the disputed facts on these issues to be a question for the jury, and told the parties to frame the issues so that they would reach a jury.

The determination of whether or not the conduct of T & T's attorney raised an issue of fact that T & T had waived the statute of limitations or created equitable rights in plaintiff was heard and determined as if in summary judgment. Before the court was the verified brief of plaintiff, and the affidavit of T & T's attorney. T & T was therefore not prejudiced by being denied an additional summary judgment hearing, and we have been provided no material difference in what evidence would have been forecast had they received any further preliminary hearing on the merits of this issue. Therefore, the issue of whether T & T is protected from liability in this case is presently interlocutory.

## Dismissal of JT Enterprises

[3] In their first issue on appeal, plaintiff contends that JT Enterprises was improperly dismissed from this case on defendants' motion for summary judgment. As the trial court did not grant summary judgment on the issues of negligence and contributory negligence, the court ruled as a matter of law that there was no theory of agency liability for the underlying claims to retain JT Enterprises as a party to this action. Based on the analysis below, we reverse this dismissal.

Summary judgment is proper where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). In determining whether summary judgment is proper, the trial court must view the evidence in the light most favorable to the non-moving party, giving the non-moving party the benefit of all reasonable inferences. *Coats v. Jones*, 63 N.C. App. 151, 154, 303 S.E.2d 655, 657, *aff'd*, 309 N.C. 815, 309 S.E.2d 253 (1983). The burden to establish the nonexistence of any triable issue of fact rests on the moving party. *Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 858 (1988).

Principles of agency arise when parties manifest consent that one shall act on behalf of the other and subject to their control. *Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 277, 357 S.E.2d 394, 397, *disc. review denied*, 320 N.C. 631, 360 S.E.2d 87 (1987). Whenever the principal retains the right "to control and direct the manner in which the

details of the work are to be executed" by his agent, the doctrine of *respondeat superior* operates to make the principal vicariously liable for the tortious acts committed by the agent within the scope of their employment. *Hayes v. Elon College,* 224 N.C. 11, 15, 29 S.E.2d 137, 140-41 (1944); *see also Harmon v. Contracting Co.,* 159 N.C. 22, 27-28, 74 S.E. 632, 634 (1912); *Scott v. Lumber Co.,* 232 N.C. 162, 165, 59 S.E.2d 425, 426-27 (1950). Our Supreme Court has held:

> [A] principal's vicarious liability for the torts of his agent depends *on the degree of control retained* by the principal over the details of the work as it is being performed. The controlling principle is that vicarious liability arises from the right of supervision and control.

*Vaughn v. Dept. of Human Resources,* 296 N.C. 683, 686, 252 S.E.2d 792, 795 (1979) (emphasis added). Determining whether the degree of control rises to a level of *respondent superior* is a question of fact. *Miller v. Piedmont Steam Co.,* 137 N.C. App. 520, 524-25, 528 S.E.2d 923, 926-27, *disc. review denied,* 352 N.C. 590, 544 S.E.2d 782 (2000); *see also Hayman,* 86 N.C. App. at 278-79, 357 S.E.2d at 397-98; *Phillips v. Restaurant Mgmt. of Carolina, L.P.,* 146 N.C. App. 203, 209, 552 S.E.2d 686, 690-91 (2001), *disc. review denied,* 355 N.C. 214, 560 S.E.2d 132 (2002) (where summary judgment was reversed because the court found an issue of fact as to whether employee's acts were within the scope of his employment and in furtherance of Restaurant Management's business).

In *Miller* and *Hayman,* both under summary judgment review, this Court looked to the terms of the agreements between the franchisor and franchisee to determine whether there was an issue of fact that franchisor maintained such daily control as to constitute the franchisee as an agent. In this case, the relevant agreement is the Management Services Agreement (MSA) between the franchisee's assignee, T & T, and the management company, JT Enterprises.

The MSA contains the following provisions:

Services Covered. The Management Company shall render the following services to the Operator [T & T] with respect to the Unit [restaurant were plaintiff was injured] specified.

(a) General and daily supervision of the operations of the Units. Further, to the extent agreed to by the parties, general and daily supervision of the operations of any other like food

service business now or hereafter owned or operated by the operator during the term of this agreement.

\*\*\*\*

(i) For personnel working in the Units, hire all of the Operator's personnel jointly with Operator's designated representative and, thereafter, supervise such personnel.

(j) Purchase all food and equipment, and maintain inventory controls over food, supplies and equipment.

(k) Supervise the maintenance, repairs and clean up of the Units so that [*sic.*] all times their appearance will conform to the standards established by McDonald's Corporation.

(Emphasis added.) Additionally, under the <u>Compliance with Franchise Agreement</u> provision of the agreement, JT Enterprises is bound to:

[R]ecognize[] and acknowledge[] that its compliance, and the compliance of the managers and other personnel under its supervision, direction and/or control, with all of the terms, covenants and conditions of the franchise agreement . . . .

Unlike the agreements at issue in *Miller* and *Hayman*, we find this agreement sufficient to raise an issue of fact as to the daily control of JT Enterprises over the McDonald's franchise where plaintiff was injured. The Courts in *Miller* and *Hayman* found no issue of fact as to whether an agency relationship existed, because under the franchise agreements, in those cases the franchisor retained no control over the hiring, firing, or supervision of personnel. *Miller*, 137 N.C. App. at 524-25, 528 S.E.2d at 926-27; *Hayman*, 86 N.C. App. at 278-79, 357 S.E.2d at 397-98. These Courts also focused on whether the contractual remedy of the franchisor, in the event of a breach, would affect daily control. The MSA does not set out any such remedies and we focus our analysis on the overall daily control of personnel and operations as evidenced by the MSA.

In the case at bar, using the language of the MSA, JT Enterprises has the following duties: "General and daily supervision of the operations of the Units"; "hire all of the Operator's personnel jointly with Operator's designated representative and, thereafter, supervise such personnel"; "[p]urchase all food . . . maintain inventory controls over food, supplies, and equipment"; and "[s]upervise the maintenance,

repairs, and clean up of the Units so that [*sic*] all times their appearance will conform to the standards established by McDonald's Corporation." Under the MSA, JT Enterprises assists both in the hiring and the supervising of the personnel of the franchise and therefore *distinguishes this case from Miller and Hayman.* Additionally under the MSA, JT Enterprises purchases all food and maintains the restaurant's food inventories, a duty which at least raises an issue of fact of daily control over a fast food restaurant.

Therefore, we hold that the terms of the MSA raise an issue of fact as to whether JT Enterprises management duties over the restaurant where plaintiff was injured, are sufficient for a jury to determine if JT Enterprises asserted daily control over the establishment. We therefore reverse the lower court's grant of summary judgment in favor JT Enterprises.

### Dismissal of Mr. Tart

[4] Plaintiff's second issue on appeal is that the trial court erred in granting summary judgment in favor of Mr. Tart. Plaintiff argues Mr. Tart should remain a party to this action under either the doctrine of "joint venture," or the doctrine of "piercing the corporate veil."

"Joint venture" is synonymous with "joint adventure." *See Pike v. Trust Co.*, 274 N.C. 1, 8, 161 S.E.2d 453, 460 (1968). For a joint adventure to exist, " 'there must be (1) an agreement, express or implied, to carry out a single business venture *with joint sharing of profits*, and (2) an *equal right of control* of the means employed to carry out the venture.' " *Rhoney v. Fele*, 134 N.C. App. 614, 620, 518 S.E.2d 536, 541 (1999) (quoting *Edwards v. Northwestern Bank*, 39 N.C. App. 261, 275, 250 S.E.2d 651, 661 (1979)), *disc. review denied*, 351 N.C. 360, 542 S.E.2d 217 (2000). "The control required for imputing negligence under a joint enterprise theory is not actual physical control, but the *legal right* to control the conduct of the other with respect to the prosecution of the common purpose." *Slaughter v. Slaughter*, 93 N.C. App. 717, 721, 379 S.E.2d 98, 101, *disc. review allowed*, 325 N.C. 273, 384 S.E.2d 519 (1989), *disc. review dismissed as improvidently allowed*, 326 N.C. 479, 389 S.E.2d 803 (1990).

In the instant case, for a "joint venture" to exist between Mr. Tart and the corporations of T & T and JT Enterprises, our law requires evidence that these corporations had the legal right to control the conduct of Mr. Tart in "prosecution of the common purpose" of running the profitable restaurant where plaintiff was injured.

Furthermore, that these corporations were sharing in the profits of the venture. No such evidence has been forecast.

The only evidence of record shows that Mr. Tart was president and 50% shareholder of JT Enterprises and T & T. Furthermore, the evidence shows that Mr. Tart did not "share" in the profits with either of these corporations. With JT Enterprises, a Sub-chapter C corporation, Mr. Tart was both president and an employee, receiving "biweekly" paychecks. With T & T, a Sub-chapter S corporation, Mr. Tart received the monthly profits of T & T flowing to him as personal, taxable income. Mr. Tart stated in his deposition, that, "[i]f at the end of the year there's any [profits] left over, you have an option to either leave it in the business or take a vacation or buy some Christmas presents or what have you." Plaintiff has offered no evidence that T & T is sharing in the corporate profits. Thus, this theory of liability fails.

**[5]** Plaintiff next attempts to keep Mr. Tart individually as a party to this action by piercing the corporate structure utilized to operate his restaurants and presenting them as a mere instrumentality of himself. We do not believe the evidence as forecast raises an issue of fact as to this theory.

It is well recognized that courts will disregard the corporate form or "pierce the corporate veil," and extend liability for corporate obligations beyond the confines of a corporation's separate entity whenever necessary to prevent fraud or to achieve equity. *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). This Court has enumerated three elements which support an attack on a separate corporate entity:

> " ' "(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> " ' "(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

> " ' "(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." ' "

*B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966) (citations omitted). Case law has provided a number of factors for a reviewing court to consider when determining whether to pierce the corporate veil:

　　1. Inadequate capitalization.

　　2. Non-compliance with corporate formalities.

　　3. Complete domination and control of the corporation so that it has no independent identity.

　　4. Excessive fragmentation of a single enterprise into separate corporations.

*Glenn*, 313 N.C. at 455, 329 S.E.2d 331 (citations omitted). No one factor has been deemed dispositive by our Courts, and thus we read the totality of the forecast evidence and of factors set forth in *Glenn* in determining whether an issue of fact exists sufficient to survive summary judgment.

　　Mr. Tart's undisputed affidavit shows that each of the corporations of which he is president, including JT Enterprises and T & T, adhered with great care to corporate formalities: they keep completely separate records, regular meetings were held of directors and shareholders, minutes were kept for all meetings and corporate actions, and by-laws for each corporation were in place. Additionally, each had obtained the same insurance liability coverage amounting to $26 million dollars. From Mr. Tart's first answer to plaintiff's complaint, he gave clear notice of who he believed was the proper, fully insured defendant:

　　[T]his franchise was sold and assigned to T & T Management Corporation by written Assignment and Consent To Assignment effective January 2, 1997. From and after January 2, 1997, the franchise to the McDonald's at this location was owned by T&T Management Corporation which operated this McDonald's restaurant, with management services being provided to T & T management Corporation by Johnny Tart Enterprises, Inc. under a Management Services Agreement . . . dated January 1, 1997.

　　In light of the forecast evidence, we do not find Mr. Tart has abused the corporate structure, and therefore affirm the lower court's grant of summary judgment in favor of Mr. Tart on all theories of liability.

### Conclusion

In this opinion, we have dismissed as interlocutory all issues raised in defendants' cross-assignments of error in plaintiff's appeal, and those assignments of error in their own appeal. We have reversed the lower court's grant of summary judgment dismissing defendant JT Enterprises because we believe there to be an issue of fact concerning whether JT Enterprises is liable under principles of agency. We have affirmed the lower court's grant of summary judgment in favor of Mr. Tart as plaintiff has forecast no evidence to support any theory of individual liability on his part.

Therefore, after thorough review of the briefs, records, transcripts, and depositions, we hereby

Reverse in part and affirm in·part.

Judges HUDSON and LEVINSON concur.

