FRED GAMMONS, GUARDIAN AD LITEM FOR TRAVIS GAMMONS v. NORTH CAROLINA
DEPARTMENT OF HUMAN RESOURCES

No. 311PA95

(Filed 31 July 1996)

**State § 33 (NCI4th)— Tort Claims action—failure to provide child protective services—jurisdiction of Industrial Commission**

Summary judgment for defendant on jurisdictional grounds was properly denied in an action in the Industrial Commission under the Tort Claims Act against the North Carolina Department of Human Resources for failure to properly supervise the Cleveland County Department of Social Services in the provision of child protective services to a child who was ultimately injured. Analysis of the statutory scheme for the provision of child protective services indicates that the Cleveland County Director of Social Services is the agent of the Social Services Commission of the North Carolina Department of Human Resources with respect to the investigation and reporting of child abuse and neglect and that the Social Services Commission is given the right to control and direct the manner in which the County Director is to provide protective services. Following the reasoning in *Vaughn v. N.C. Dept. of Human Resources*, 296 N.C. 683, there exists a sufficient agency relationship between the Department of Human Resources and the Cleveland County Director of Social Services and his staff that the doctrine of *respondeat superior* is implicated. Because the Department of Human Resources may be liable, the Industrial Commission has jurisdiction under the Tort Claims Act. N.C.G.S. § 143B-138; N.C.G.S. § 143B-153; N.C.G.S. § 108A-12(a); N.C.G.S. § 108A-14; N.C.G.S. § 7A-542; N.C.G.S. § 7A-544; N.C.G.S. § 7A-548; N.C.G.S. § 7A-552.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 184 et seq.**

**Liability of governmental entity to builder or developer for negligent issuance of building permit subsequently suspended or revoked. 41 ALR4th 99.**

**Governmental liability for negligence in licensing, regulating, or supervising private day-care home in which child is injured. 68 ALR4th 266.**

**Municipal liability for negligent performance of building inspector's duties. 24 ALR5th 200.**

On discretionary review pursuant to N.G.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 119 N.C. App. 589, 459 S.E.2d 295 (1995), affirming the order of the North Carolina Industrial Commission entered 30 March 1994 in Docket No. 9410IC695. Heard in the Supreme Court 11 March 1996.

*Thomas B. Kakassy, P.A., by Thomas B. Kakassy, for plaintiff-appellee.*

*Michael F. Easley, Attorney General, by D. Sigsbee Miller, Assistant Attorney General, Gayl M. Manthei, Special Deputy Attorney General, and David Gordon, Assistant Attorney General, for defendant-appellant.*

ORR, Justice.

This is an action for recovery of damages under the Tort Claims Act which was brought by the minor child, Travis Gammons, by and through his guardian *ad litem*, Fred Gammons ("the claimant") against defendant North Carolina Department of Human Resources, by and through its local agencies, the County of Cleveland and the Cleveland County Department of Social Services, for failure to properly supervise the Cleveland County Department of Social Services in the provision of child protective services. On 15 July 1991, the claimant commenced this action by filing an affidavit with the North Carolina Industrial Commission pursuant to the Tort Claims Act, N.C.G.S. §§ 143-291 to -300.1 (Supp. 1995). In the affidavit, the claimant specifically alleges that Cleveland County Department of Social Services employees failed to properly respond to reports that the minor child was being physically abused by his stepfather. The record tends to show that on at least three occasions from February 1988 until August 1988, reports of physical abuse were made to the Cleveland County Department of Social Services, which took no action to protect the interest of the minor child or to remove him from the injurious environment in which he lived. After the injuries had been inflicted, the Cleveland County Department of Social Services took legal custody of the minor child and, in 1991, released custody of the minor child to Fred Gammons, who is the minor child's biological father.

GAMMONS v. N.C. DEPT. OF HUMAN RESOURCES

[344 N.C. 51 (1996)]

On 25 October 1991, defendant Department of Human Resources moved to dismiss claimant's claim pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure, specifically alleging that the claimant "failed to allege negligence by a named officer, agent, employee or involuntary servant of the State as required by G.S. § 143-291 and [§] 143-297" and that "[n]either Cleveland County nor Cleveland County Department of Social Services is an agent of the defendant North Carolina Department of Human Resources" with respect to providing child protective services. On 15 June 1993, the claimant moved to strike from consideration affidavits attached to defendant's motion to dismiss, which the deputy commissioner allowed, and then denied defendant's motion to dismiss. On 1 July 1993, defendant moved for reconsideration of the deputy commissioner's order allowing the claimant's motion to strike defendant's affidavits and its denial of defendant's motion to dismiss, and in the alternative, defendant moved for summary judgment on the same jurisdictional grounds as the motion to dismiss and requested consideration of the supporting affidavits. On 19 July 1993, defendant's motion for reconsideration was denied.

On 24 July 1993, the deputy commissioner denied defendant's motion to dismiss and ordered the claimant to file an amended affidavit (within thirty days of the date of the order), which "names an officer, agent, or employee of the State who is alleged to be negligent." On 28 July 1993, the claimant filed an amended affidavit naming as officers, employees, or agents of the State, Mary Deyampert, Director of the Department of Human Resources, and Lois Ray, Regional Director of the Department of Human Resources, as well as several Cleveland County Department of Social Services employees, including County Director Hal Smith.

On 5 August 1993, the deputy commissioner denied defendant's motion for summary judgment, and on 12 August 1993, defendant appealed to the full Commission. On 30 March 1994, the full Commission ordered that defendant's motion for summary judgment be denied, concluding that this case is controlled by *Coleman v. Cooper*, 102 N.C. App. 650, 403 S.E.2d 577, *disc. rev. denied*, 329 N.C. 786, 408 S.E.2d 517 (1991). From this order, on 29 April 1994, defendant appealed to the Court of Appeals, which affirmed the decision of the full Commission. On 2 November 1995, we granted discretionary review.

The sole issue to be decided is whether, under principles of agency law as applied to the facts in this particular case, the

Cleveland County Director of Social Services and his staff are agents of the North Carolina Department of Human Resources for the purpose of providing child protective services so as to confer jurisdiction upon the Industrial Commission to hear and decide the tort claim at issue. The claimant contends that the Department of Human Resources is vicariously liable for the negligence of the Cleveland County Department of Social Services for failing to properly investigate the reports of abuse which resulted in the minor child being severely injured by his stepfather.

Generally, the State is immune from suit unless it expressly consents to be sued. By the 1951 enactment of the Tort Claims Act, the General Assembly partially waived the sovereign immunity of the State. The Tort Claims Act provides in pertinent part:

(a) The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State. The Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

N.C.G.S. § 143-291(a) (Supp. 1995).

The effect of the Tort Claims Act was twofold. First, the State partially waived its sovereign immunity by consenting to direct suits brought as a result of negligent acts committed by its employees in the course of their employment. Second, the Act provided that the forum for such direct actions would be the Industrial Commission, rather than the State courts.

*Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 329, 293 S.E.2d 182, 185 (1982). "Under the Tort Claims Act, jurisdiction is vested in the Industrial Commission to hear claims against the State of North Carolina for personal injuries sustained by any person as a result of the negligence of a State employee while acting within the scope of his employment." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 536, 299 S.E.2d 618, 626 (1983).

**GAMMONS v. N.C. DEPT. OF HUMAN RESOURCES**

[344 N.C. 51 (1996)]

In this case, we are asked to decide whether the State, through the North Carolina Department of Human Resources, is liable for the negligent acts of the Cleveland County Director of Social Services and his staff with respect to the delivery of child protective services so as to confer jurisdiction on the Industrial Commission to hear and decide the merits of this claim pursuant to the provisions of the Tort Claims Act. Application of the principles of agency law and *respondeat superior* to the statutory scheme for the provision of child protective services leads us to conclude that because, in this particular case, the Department of Human Resources may be liable for the negligence of the Cleveland County Director of Social Services and his staff, jurisdiction does reside with the Commission, which may therefore "hear and pass upon" the claimant's tort claim.

In the case at bar, the Court of Appeals concluded, as did the Commission, that this case is "controlled by *Coleman v. Cooper*, 102 N.C. App. 650, 403 S.E.2d 577." In *Coleman*, the plaintiff, as administrator of the estates of her two minor daughters, filed an action against, among others, the Wake County Department of Social Services, seeking damages for the wrongful death of the decedents. The defendant had conducted a sexual abuse investigation of Melvin Coleman, the father/stepfather of the two girls, after the stepdaughter told a school nurse that she and her half-sister were involved in sexual relations with Coleman. During the investigation, Coleman was confronted by social worker Kathy Cooper, also a defendant, with the sexual abuse allegations. Despite denying the allegations, Coleman was subsequently told by his attorney that indictments had been handed down by the grand jury. Instead of turning himself in, Coleman broke into the trailer where the girls lived, stabbed and murdered them, and then fire-bombed the trailer. In *Coleman*, the plaintiff alleged that the liability of the Wake County Department of Social Services was " 'based upon respondeat superior for the negligence of defendant Cooper' " and the " 'failure of the Defendant Wake County to have appropriate safety procedures.' " *Id.* at 655, 403 S.E.2d at 580.

The trial court, after a series of motions and appeals, entered an order granting defendant Wake County Department of Social Services' motion to dismiss for lack of subject matter jurisdiction. On appeal to the Court of Appeals, the plaintiff contended that Wake County Superior Court was the proper forum to hear and decide the wrongful death claim and that the trial court erred in holding that the claim should be brought before the Industrial Commission. In decid-

ing the issue before it, the Court of Appeals held that the Industrial Commission was the proper forum for the claim. In making that determination, the Court of Appeals relied exclusively on *Vaughn v. N.C. Dept. of Human Resources*, 296 N.C. 683, 252 S.E.2d 792 (1979).

In *Vaughn*, the claimant filed a negligence claim against the Department of Human Resources with the Industrial Commission pursuant to the provisions of the Tort Claims Act. The claimant alleged that the Durham County Director of Social Services and his staff negligently placed in her home a foster child who was a carrier of the cytomegalo virus with knowledge that the claimant was attempting to become pregnant. Claimant subsequently became pregnant and while pregnant contracted the cytomegalo virus. Upon the advice of her physician, the claimant was forced to abort her pregnancy because of the high risk of birth defects to the unborn child.

The Department of Human Resources moved to dismiss the claim for lack of jurisdiction, contending the "Durham County Department of Social Services is not a State department and the Director and employees thereof are not State employees within the meaning of G.S. 143-291." *Id.* at 684, 252 S.E.2d at 794. The deputy commissioner held that the Industrial· Commission had jurisdiction to hear and decide the claim; the full Commission, and subsequently the Court of Appeals, affirmed the deputy commissioner's order.

On appeal to this Court, the issue was whether the Industrial Commission had jurisdiction to hear and determine the asserted tort claim. This Court stated:

> In order for the Commission to assert jurisdiction over this claim[,] there must be a showing that the Director of the Durham County Department of Social Services and his staff were acting as the "involuntary servants or agents" of a "State Department" under circumstances in which the State, if a private person, would be liable for the negligent acts of the named servants or agents. G.S. 143-291.

*Vaughn*, 296 N.C. at 685, 252 S.E.2d at 794.

The Court then analyzed in detail the statutory scheme for the delivery of foster care services and concluded that the

> County Director of Social Services is the agent of the Social Services Commission of the Department of Human Resources

with respect to the placement of children in foster homes and that the Social Services Commission is given the right to control and direct the manner in which the County Director is to place children in foster homes.

*Id.* at 686, 252 S.E.2d at 795. We held that "the Department of Human Resources is liable for the negligent acts of its agents, the Durham County Director of Social Services and his subordinates, with respect to the placement of children in foster homes." *Id.* at 692, 252 S.E.2d at 798. Our holding was "narrowly premised on the ground that the Department of Human Resources through the Social Services Commission has the right to control the manner in which the County Director is to execute his obligation to place children in foster homes." *Id.* We specifically noted that we "express no opinion on whether the Department of Human Resources might also be liable for negligent acts of the County Director outside the scope of his obligation to place children in foster homes." *Id.*

Although *Vaughn* dealt with a different factual situation—the negligent placement of a child in a foster home—the legal analysis is applicable to the case *sub judice* in that the *Vaughn* Court analyzed in detail the statutory scheme and administrative regulations for the delivery of foster care services. Thus, we believe *Vaughn* is instructive in analyzing the issue presently under review with respect to the delivery of child protective services. "In every instance the liability of the Department of Human Resources depends upon application of the principles of agency and respondeat superior to the facts in the case under consideration." *Id.*

Whenever the principal retains the right "to control and direct the manner in which the details of the work are to be executed" by his agent, the doctrine of respondeat superior operates to make the principal vicariously liable for the tortious acts committed by the agent within the scope of his employment. *Hayes v. [Board of Trustees of] Elon College*, 224 N.C. 11, [15,] 29 S.E.2d 137[, 139-140] (1944); *Harmon v. [Ferguson] Contracting Co.*, 159 N.C. 22, [27,] 74 S.E. 632[, 634] (1912)[; s]ee also[] *Scott v. [Waccamaw] Lumber Co.*, 232 N.C. 162, [165,] 59 S.E.2d 425[, 426] (1950). Conversely, a principal is not vicariously liable for the tortious acts of an agent who is not subject to the control and direction of the principal with respect to the details of the work and is subordinate only in *effecting a result* in accordance with the principal's wishes. *Harmon*[, 159 N.C. at 27, 74 S.E. at

634; s]ee generally[] Restatement (Second) of Agency § 2 (1957). In sum, a principal's vicarious liability for the torts of his agent depends on the degree of control retained by the principal over the details of the work as it is being performed. The controlling principle is that vicarious liability arises from the right of supervision and control. Accord[] Hayes[, 224 N.C. at 15, 29 S.E.2d at 140; s]ee also[] 8 N.C. Index 3d, Master and Servant, § 3 and cases collected therein.

Vaughn, 296 N.C. at 686, 252 S.E.2d at 795. Analysis of the statutory scheme adopted by the General Assembly for the provision of child protective services indicates that the Cleveland County Director of Social Services is the agent of the Social Services Commission of the North Carolina Department of Human Resources with respect to the investigation and reporting of child abuse and neglect and that the Social Services Commission is given the right to control and direct the manner in which the County Director is to provide protective services. "[T]he conclusions we reach with respect to the status of the County Director as an agent of the Department of Human Resources and with respect to the vicarious liability of the Department for the negligent acts of the County Director are equally applicable, under principles of subagency, to the . . . caseworkers named by claimant." Id. at 686-87, 252 S.E.2d at 795.

N.C.G.S. § 143B-138 of chapter 143B, article 3, entitled "Human Resources," provides in pertinent part that: "All functions, powers, duties, and obligations heretofore vested" in the North Carolina Division of Social Services and the North Carolina Social Services Commission are "vested in the Department of Human Resources." N.C.G.S. § 143B-138(b)(11), (12) (1993). Further, N.C.G.S. § 143B-153 provides in pertinent part:

There is hereby created the Social Services Commission of the Department of Human Resources with the power and duty to adopt rules and regulations to be followed in the conduct of the State's social service programs with the power and duty to adopt, amend, and rescind rules and regulations under and not inconsistent with the laws of the State necessary to carry out the provisions and purposes of this Article. . . .

(1) The Social Services Commission is authorized and empowered to adopt such rules and regulations that may be necessary and desirable for the programs admin-

istered by the Department of Human Resources as provided in Chapter 108A of the General Statutes of the State of North Carolina.

N.C.G.S. § 143B-153 (Supp. 1995).

Next, article I, section 108A-1 of chapter 108A, entitled "Social Services," provides in pertinent part:

Every county shall have a board of social services which shall establish county policies for the programs established by this Chapter *in conformity with the rules and regulations of the Social Services Commission and under the supervision of the Department of Human Resources.*

N.C.G.S. § 108A-1 (1994) (emphasis added). "The board of social services of every county shall appoint a director of social services in accordance with the merit system rules of the State Personnel Commission . . . ." N.C.G.S. § 108A-12(a) (1994). The county director of social services shall "act as agent of the Social Services Commission and Department of Human Resources in relation to work required by the Social Services Commission and Department of Human Resources in the county." N.C.G.S. § 108A-14(a)(5) (Supp. 1995). Pursuant to N.C.G.S. § 108A-14(a)(11), the "work required" of the Cleveland County Director of Social Services in the instant case includes in relevant part that he "investigate reports of child abuse and neglect and . . . take appropriate action to protect such children pursuant to the Child Abuse Reporting Law, Article 44 of Chapter 7A." N.C.G.S. § 108A-14(a)(11).

Article 44 of chapter 7A, entitled "Screening of Abuse and Neglect Complaints," sets forth the requirements for the delivery of protective services in county social services departments. N.C.G.S. § 7A-542 provides in pertinent part:

The Director of the Department of Social Services in each county of the State shall establish protective services for juveniles alleged to be abused, neglected, or dependent.

Protective services shall include the investigation and screening of complaints, casework or other counseling services to parents or other caretakers as provided by the director to help the parents or other caretakers and the court to prevent abuse or neglect, to improve the quality of child care, to be more

adequate parents or caretakers, and to preserve and stabilize family life.

N.C.G.S. § 7A-542 (1995). N.C.G.S. § 7A-544 provides in pertinent part:

> When a report of abuse, neglect, or dependency is received, the Director of the Department of Social Services shall make a prompt and thorough investigation in order to ascertain the facts of the case, the extent of the abuse or neglect, and the risk of harm to the juvenile, in order to determine whether protective services should be provided or the complaint filed as a petition.

N.C.G.S. § 7A-544 (1995). N.C.G.S. § 7A-548 provides in pertinent part:

> (a) If the Director finds evidence that a juvenile may have been abused as defined by G.S. 7A-517(1), the Director shall make an immediate oral and subsequent written report of the findings to the district attorney or the district attorney's designee and the appropriate local law enforcement agency within 48 hours after receipt of the report. . . .

> If the Director receives information that a juvenile may have been physically harmed in violation of any criminal statute by any person other than the juvenile's parent, guardian, custodian, or caretaker, the Director shall make an immediate oral and subsequent written report of that information to the district attorney or the district attorney's designee and to the appropriate local law enforcement agency within 48 hours after receipt of the information. . . .

> If the report received pursuant to G.S. 7A-543 involves abuse or neglect of a juvenile in day care, either in a day care facility or a day care home, the Director shall notify the Department of Human Resources within 24 hours or on the next working day of receipt of the report.

> (a1) If the Director finds evidence that a juvenile has been abused or neglected as defined by G.S. 7A-517 in a day care facility or day care home, he shall immediately so notify the Department of Human Resources and, in the case of child sexual abuse, the State Bureau of Investigation . . . .

> (a2) Upon completion of the investigation, the Director shall give the Department written notification of the results of the

investigation required by G.S. 7A-544. Upon completion of an investigation of child sexual abuse in a day care facility or day care home, the Director shall also make written notification of the results of the investigation to the State Bureau of Investigation.

The Director of the Department of Social Services shall submit a report of alleged abuse, neglect, or dependency cases or child fatalities that are the result of alleged maltreatment to the central registry under the policies adopted by the Social Services Commission.

N.C.G.S. § 7A-548(a), (a1), (a2) (1995).

The Department of Human Resources shall maintain a central registry of abuse, neglect, and dependency cases and child fatalities that are the result of alleged maltreatment that are reported under this Article in order to compile data for appropriate study of the extent of abuse and neglect within the State and to identify repeated abuses of the same juvenile or of other juveniles in the same family. This data shall be furnished by county directors of social services to the Department of Human Resources and shall be confidential, subject to the policies adopted by the Social Services Commission providing for its use for study and research and for other appropriate disclosure.

N.C.G.S. § 7A-552 (1995).

Therefore, N.C.G.S. § 7A-548(a2) requires county directors to notify the Department of Human Resources upon completion of any investigation executed pursuant to N.C.G.S. § 7A-544. Notification is required only upon completion of the investigation unless the case involves abuse or neglect in the day care setting, in which case notification is required within 24 hours of the receipt of a report of abuse by the county director. N.C.G.S. § 7A-548(a). The instant case did not involve the day care setting, so notification was required only after the investigation was complete. Such notification after the fact does not demonstrate the level of supervision or control required to employ the doctrine of *respondeat superior*. However, following the analysis used in *Vaughn*, we must also review any enacted administrative guidelines for the provision of child protective services to determine whether the Department of Human Resources retains a right of control over the manner in which child protective services are provided by a local agency. Our review of the record reveals that,

pursuant to the mandate of N.C.G.S. § 143B-153, the North Carolina Social Services Commission has adopted comprehensive mandatory administrative regulations which detail the manner in which a county director and his staff are to supervise the delivery of child protective services, including the investigation and reporting of alleged child abuse and neglect. These mandatory standards on protective services instruct county directors of social services on virtually every aspect of providing child protective services. Specifically, regulation .0101 of title 10, subchapter 41I of the North Carolina Administrative Code, entitled "Protective Services," provides:

> Rules in this Subchapter govern the provision of protective services for children with funds administered by the Division of Social Services. Included are requirements for the management of the central registry of neglect and abuse cases, and requirements which *must* be met by county departments of social services in carrying out their responsibilities for the protection of children under Chapter 7A of the General Statutes.

10 NCAC 41I .0101 (January 1986) (emphasis added).

In addition, the North Carolina Division of Social Services, a subdivision of the Department of Human Resources, has written comprehensive guidelines contained in its *Family Services Manual*, which "is intended to guide supervisors and social workers providing protective services for children to do good casework with those who become known to an agency as a result of a report of child abuse or neglect." I *Family Services Manual* ch. VIII, sec. 1450, at 2 (N.C. Div. of Social Servs. Jan. 1, 1980). Specifically contained in the *Family Services Manual* is a section entitled "Statement of Philosophy and Purpose." This section provides:

> The legal mandate of protective services is the *state's discharging its responsibility* to assure that its citizens are properly protected and minimally cared for when those citizens are dependent upon others. A child depends on parents or other caretakers to feed, cloth[e], provide shelter, give supervision, protect from physical harm and danger. When the parents or other caretakers fail in their responsibilities to care for the children, *the state intervenes through the local department of social services.*

I *Family Services Manual* ch. VIII, sec. 1450, at 1 (N.C. Div. of Social Servs. Jan. 1, 1980) (emphasis added). Another section, entitled "Role of the State Division of Social Services," provides as follows:

A. The Division of Social Services carries the *primary* responsibility for statewide program development and coordination of child protective services. This includes:

. . . .

2. Program planning and development with county departments and other state agencies.

3. *Development and distribution of standards, policies and procedures for the delivery of protective services by county departments of social services.*

. . . .

B. The Protective Services Unit within the Division carries its supervisory and consultation responsibilities in cooperation with the services staff in the regional offices. The central office staff provides support and assistance to the regional staff in working with county departments to strengthen the local service delivery system.

I *Family Services Manual* ch. VIII, sec. 1467, at 8 (N.C. Div. of Social Servs. Oct. 1, 1980) (emphasis added).

Clearly, the above statutory scheme along with the mandatory administrative regulations and the Division of Social Services' *Family Services Manual* demonstrate the extent of the "degree of control retained by the [Department of Human Resources] over the details of the [provision of child protective services at the local level] as it is being performed." *Vaughn*, 296 N.C. at 686, 252 S.E.2d at 795. "[I]n defining the duties of the County Director of Social Services[,] the General Assembly envisaged that he would be the agent responsible for executing whatever work was required by the Social Services Commission in his county." *Id.* at 690, 252 S.E.2d at 797.

As we have previously stated, the "functions, powers, duties, and obligations heretofore vested" in the North Carolina Division of Social Services and the North Carolina Social Services Commission "continue to be vested in the Department of Human Resources." N.C.G.S. § 143B-138(b)(11), (12). Further, county directors of social services are "agent[s] of the Social Services Commission and Department of Human Resources in relation to *work required* by the Social Services Commission and Department of Human Resources in the county." N.C.G.S. § 108A-14(a)(5) (emphasis added). Under

N.C.G.S. § 108A-14(a)(11), the General Assembly made clear its intent to include as work required by the Social Services Commission and the Department of Human Resources of a county director of social services the investigation of reports of child abuse and neglect.

Based on the plain language of our statutory law governing social services and the provision of child protective services, the Department of Human Resources has substantial and official control over the provision of child protective services and designates the county director as the person responsible for carrying out the policies formulated by the Department, through the Social Services Commission and the Division of Social Services. "Thus, in practice, as well as in name, the role of the County Director in the delivery of [child protective] services is that of an agent. Like the agent, the County Director acts on behalf of the Department of Human Resources and is subject to its control with respect to the actions he takes on its behalf." *Vaughn*, 296 N.C. at 690, 252 S.E.2d at 797.

Thus, following the reasoning in *Vaughn*, as correctly applied in *Coleman*, we hold that in the instant case, regarding the provision of child protective services, there exists a sufficient agency relationship between the Department of Human Resources and the Cleveland County Director of Social Services and his staff such that the doctrine of *respondeat superior* is implicated. It follows therefore that because the Department of Human Resources may be liable, the Industrial Commission has jurisdiction under the Tort Claims Act to determine the Department of Human Resources' liability for alleged negligence of the Cleveland County Director of Social Services and his staff while acting within the scope of their obligation to assure that the county's citizens are "properly protected and minimally cared for when those citizens are dependent upon others" as mandated by the Department of Human Resources. I *Family Services Manual* ch. VIII, sec. 1450, at 1 (N.C. Div. of Social Servs. Jan. 1, 1980).

The Court of Appeals was correct in affirming the Industrial Commission's denial of defendant's motion for summary judgment.

AFFIRMED.