The parties agreed that the Deputy Commissioner would bifurcate the claim and enter a decision on the issue of liability without a ruling on damages.
Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Prior to 17 March 1999, the parental rights of plaintiffs natural mother were terminated by the Lenoir County District Court. Prior to and after 17 March 1997, legal custody of plaintiff was with the Lenoir County Department of Social Services by order of the District Court of Lenoir County. Ms. Cathy Skarbek is the Lenoir County DSS Social Worker assigned to this case. The parties agree that it would not be in the best interests of plaintiff if his natural mother learns of his current whereabouts.
4. Plaintiff appears by and through his guardian ad litem, Victor H. E. Morgan, Jr., Esquire.
5. On 17 March 1997, Burnest and Rita Gamble were foster parents as defined in G.S. 131D-10.2(9a).
6. Prior to 17 March 1997, plaintiff had been placed in the foster home of Burnest and Rita Gamble pursuant to G.S. 108A-14(12) by the Lenoir County Department of Social Services.
7. Plaintiff was diagnosed with microcephaly, an abnormally small head usually associated with mental retardation.
8. On 17 March 1997 at approximately 4:30 p.m., Mr. Gamble was using a riding lawn mower at his personal residence.
9. On 17 March 1997, Mr. Gamble allowed the then two year old plaintiff to ride with him on the lawn mower. At some point during the mowing, Mr. Gamble allowed plaintiff off the mower to play in his sand box. Mr. Gamble was mowing around a bush when plaintiff came back to the mower. Plaintiffs foot became caught under the mower and the blades, causing severe injuries to his feet and legs.
10. Plaintiffs injuries included a large avulsion of the right calf measuring 9 x 7 cm; a 10 cm flap type laceration of the right foot; a metatarsal fracture of the right foot; a 5 cm laceration of the left calf; a 14 cm flap type laceration of the left ankle with almost complete avulsion of the heel; and a 5 cm laceration over the dorsum of the left foot. Plaintiff required several surgical operations to repair his injuries including skin grafting from the right thigh, debridement of the wounds, nerve graft, and tendon suture.
11. As of the hearing before the Deputy Commissioner, plaintiff had not fully recovered from the injuries to his left foot. The bone in his left heel was not growing and would require a bone graft within the next five years.
12. The medical bills of plaintiff are in excess of $100,000.00. The medical bills have been paid by Medicaid, and the Division of Medical Services claims a lien in the amount of its payment. The Commission does not have jurisdiction to determine this issue.
In addition, the parties stipulated into evidence the following:
1. Plaintiffs Exhibits 1 through 23 which are contained in a notebook submitted by the parties along with an index. However, defendant did not agree that plaintiff had small head syndrome according to the current medical reports.
2. Order terminating parental rights, marked as Defendants Exhibit 1.
3. Sections from the statute regarding control over child placement, marked as Defendants Exhibit 2.
4. Statement regarding foster care funding, marked as Defendants Exhibit 3.
The Pre-Trial Order dated 14 June 2000 which was submitted by the parties is incorporated by reference.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was born on 22 July 1994. His parents neglected him to the point that he did not know how to eat food by the time that he was two years old. The Lenoir County Department of Social Services investigated allegations of neglect and at some point took plaintiff from his parents after the department was granted custody of plaintiff by court order. Several attempts were made to place plaintiff with grandparents and foster homes but these attempts failed because the natural mother threatened family members and because plaintiff has severe behavioral difficulties. As no other options were located within the county, plaintiffs social worker sought assistance from adjacent counties.
2. In October 1996, the Craven County Department of Social Services called Rita Gamble and asked if she and her husband would be willing to take plaintiff. The Gambles had previous experience as foster parents when they lived in other states. They had recently moved to North Carolina and had completed the licensing process to become foster parents in this state. The social worker advised Mrs. Gamble that if she would not take plaintiff, he would probably be institutionalized. Mrs. Gamble expressed willingness to take plaintiff and care for him. Consequently, plaintiff moved in with the Gambles later that month.
3. When he arrived, plaintiff was difficult to control and hyperactive. Plaintiff had violent tendencies and would beat on himself. He did not know how to eat, bathe, play games, or sleep in a bed. He could only speak two words. Over the next four months, the Gambles worked with him to teach basic skills, and he began to bond with them, particularly with Mrs. Gamble. Social workers involved in the case were very pleased with plaintiffs progress.
4. The Gambles had a sizeable yard and had bought a used riding lawn mower to trim the grass. During warm weather in 1997, Mr. Gamble mowed the yard periodically. On a couple of occasions, Mr. Gamble allowed plaintiff to ride with him on the lawn mower. Plaintiff enjoyed the experience.
5. On the afternoon of 17 March 1997, Mr. Gamble was in the backyard putting gas in the mower when plaintiff indicated that he wanted to ride. Consequently, Mr. Gamble sat on the mower, put plaintiff in his lap, and began mowing the yard. At this time, Mrs. Gamble was inside the home meeting with the social worker about their other foster child. After riding with Mr. Gamble for a few minutes, plaintiff was ready to get off. Mr. Gamble stopped the mower, put plaintiff down and saw him head towards his sand box. Mr. Gamble then restarted the mower and resumed mowing the yard. Mr. Gamble checked periodically to see that plaintiff was playing in the sand box.
6. While mowing around a bush and watching where he was going, Mr. Gamble was suddenly aware that plaintiff was beside the mower and injured. Plaintiff apparently had wanted another ride, had approached the mower quickly from behind, and his feet were struck by the mower blades. As a result of the accident, plaintiff sustained serious injuries to his feet and his left calf. The Gambles immediately took plaintiff to the hospital for treatment and provided appropriate care for him as he underwent medical treatment and recuperated from his injuries.
7. Following the incident, a complaint was filed with the department of social services alleging that plaintiffs injuries resulted from the Gambles negligence. The Cumberland County Department of Social Services was asked to investigate the incident. After conducting interviews, the investigators concluded that the report of neglect was unsubstantiated, and the case was closed. However, the Gambles were asked to sign a statement in which they agreed to keep plaintiff away from machinery that could potentially cause him harm.
8. Since that time, the parental rights of both of plaintiffs natural parents have been terminated by court order. Plaintiff has continued to live with the Gambles and has progressed steadily. The Gambles love plaintiff and have sought to adopt him.
9. This claim was filed on behalf of plaintiff alleging that his injuries arose from the negligence of Mr. and Mrs. Gamble. It was also alleged that the Gambles were acting as agents of defendant at the time of the accident. There is no dispute that plaintiff had ridden on the lawn mower with Mr. Gamble on a couple of occasions prior to the 17 March 1997 incident and that he had ridden on it earlier that afternoon. Neither Mr. nor Mrs. Gamble had warned plaintiff of the danger associated with the machine. Plaintiff was 2 ½ years old at the time of the accident. It did not occur to the Gambles that letting him ride on the lawn mower could potentially be harmful or dangerous. The Gambles had the best interests of plaintiff at heart and would not have knowingly put him at risk of injury.
10. In order to qualify as foster parents, the Gambles had to take certain training, their house had to meet certain criteria and pass inspection, they had to agree to allow periodic inspections in the future, they personally had to pass evaluations by the local department of social services, and they had to sign a written agreement with the county. Under the terms of the written agreement, the Gambles agreed to treat plaintiff as a member of their family, to allow a county representative to visit their home, to be in contact with the agency regarding matters concerning plaintiff, to keep certain matters confidential and to provide plaintiff with responsible and appropriate supervision at all times. The county department agreed to be responsible for the overall planning for plaintiff, to help the foster parents meet their responsibilities toward care, to pay them the established monthly board payment, and to visit the foster home regularly.
11. The Gambles met the requirements of the State of North Carolina and they were licensed to provide foster care in their home effective 27 September 1996.
12. There was a social worker assigned to plaintiff and another social worker assigned to the Gambles. The social workers visited the home periodically and followed up regarding the childs placement in the home. However, the day-to-day parenting decisions were left up to the Gambles who decided when and what to feed plaintiff, how to train him, when he would go to bed, what clothes he would wear, and what toys he would have. It was Mrs. Gamble who decided to feed plaintiff Ensure until she could get him to eat solid food. The Gambles presented him with the rules that applied to their home. They provided the love, guidance, discipline, and care normally expected of parents according to their own discretion and experience, but subject to some general limitations set by the county, particularly as to discipline. They were responsible for the details relating to parenting plaintiff, while the social workers involved provided assistance, support, and monitored plaintiffs placement in the foster home.
13. The Gambles volunteered to serve as foster parents. They were not paid for their efforts but received a sum from the county each month to pay the expenses associated with keeping a child, including food, housing, clothing, and toys. The payment for plaintiffs board was not considered taxable income. The county department of social services provided general guidance for foster parents and set forth some basic requirements. However, the department did not control the daily activities of the family. If the department was not satisfied with the placement of the child, its only recourse was to remove the child from the home. In addition, the Gambles had no authority to bind the department with respect to decisions or purchases they made for plaintiff. Any purchases or agreements, such as for baby sitting services for plaintiff, would not have obligated the department for payment.
14. There has been no allegation that the social workers who placed plaintiff in the Gambles home were negligent in any way. The placement was a very good one and plaintiffs condition improved substantially under the guidance and care of the Gambles. The injuries Justin sustained on 17 March 1997 were not due to any abuse or intentional conduct on the part of the Gambles. Rather, plaintiff was involved in an accident, a common occurrence for children his age. Unfortunately for all concerned, the accident was unusually severe and resulted in serious injuries.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. A county department of social services is an agent of the State with respect to matters of foster child placement and Child Protective Services. G.S. 143-291; Gammons vs. N.C. Department of Human Resources,344 N.C. 51, 472 S.E.2d 722 (1996); Vaughn vs. N.C. Department of HumanResources; 296 N.C. 683, 252 S.E.2d 792 (1979).
2. Although social workers working for the Lenoir and Craven County Departments of Social Services would have been sub-agents for defendant with respect to duties delegated to them regarding foster child placement and child protective services, they were employees of the department of social services. G.S. 143-291; Gammons vs. N.C. Department of HumanResources, 344 N.C. 51, 472 S.E.2d 722 (1996); Vaughn vs. N.C. Departmentof Human Resources; 296 N.C. 683, 252 S.E.2d 792 (1979).
3. Burnest and Rita Gamble were not employees of the Craven County Department of Social Services in that they were not paid for their services and they were not subject to the departments control except as to matters required for licensing and as to certain general guidelines.Lucas vs. Lil General Stores, 289 N.C. 212, 221 S.E.2d 257 (1976).
4. The Gambles were not agents of the Craven County DSS in that the basic elements of authority and control were not present. The Gambles did not have authority to bind the Craven County DSS with their decisions, purchases, or contracts related to the foster children in their care. In addition, the Craven County DSS did not have the authority to control the daily activities and decisions of the Gambles. The amount of control retained by the Craven County DSS was sufficient only for licensing as required by law and the overall expectations relating to the care of the foster children. Although the Gambles were not technically independent contractors since they were volunteers and not paid for their services, their relationship with the Craven County DSS was more analogous to independent contractors than an employment or agency status. The Gambles had an independent calling; they had independent use of their judgment, skill, and experience in making the everyday decisions regarding the care and training of their foster children; they were not subject to discharge because of adopting one method of training the children over another; and they could follow their own timetable and set their own rules within certain broad guidelines. If the Craven County DSS had not been satisfied with the services that the Gambles provided as foster parents, its only recourse was to remove the child and possibly revoke the Gambles foster parents license. Consequently, the Gambles were not agents of the local department of social services and were not sub-agents of defendant.Vaughn vs. N.C. Department of Human Resources; 296 N.C. 683, 252 S.E.2d 792
(1979); Hayes v. Board of Trustees of Elon College, 224 N.C. 11,29 S.E.2d 137 (1944).
5. On 17 March 1997, Burnest and Rita Gamble were not acting as officers, employees, involuntary servants, or agents of the North Carolina Department of Health and Human Services. Therefore, the Commission does not have jurisdiction over this claim. G.S. 143-291.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. This claim is hereby DISMISSED for lack of jurisdiction.
2. Each side shall pay its own costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
RCR:db