DILLON, Judge.
 

 *410
 
 This matter stems from a traffic accident in which Yvonne Lewis was struck and killed by an automobile being driven by Defendant Richard Charlton as Ms. Lewis was walking across a public street.
 

 Plaintiff Kevin McKenzie, in his capacity as the administrator for Ms. Lewis' estate, filed this action against Mr. Charlton and against Defendant Reach for Independence, Inc. ("Defendant RFI"), whom Plaintiff alleges Mr. Charlton was working for at the time of the accident.
 

 *411
 
 This present appeal is brought by Plaintiff from an interlocutory order in which the trial court granted partial summary judgment to Defendant RFI, concluding that Mr. Charlton was acting as an independent contractor and not as an employee of Defendant RFI at the time of the accident. After careful review of the record, we conclude that there was a genuine issue of material fact as to whether Defendant RFI is liable for Ms. Lewis' death under the doctrine of
 
 respondeat superior
 
 . We, therefore, reverse the order of the trial court and remand for further proceedings.
 

 I. Background
 

 Defendant RFI is a government-regulated provider of Medicaid-funded services to disabled individuals. Defendant RFI contracts with paraprofessional caregivers to provide these services. In late 2014, Defendant RFI entered into a contract with Mr. Charlton to serve as a paraprofessional caregiver for disabled patients.
 

 In January 2015, Mr. Charlton's contractual obligations with Defendant RFI involved spending approximately forty (40) hours per week, providing one-on-one supervision of a certain disabled individual, hereinafter referred to as Mr. Smith
 
 [1]
 
 . At the time of the accident, Mr. Charlton was not providing caregiving services to or for anyone else either on behalf of Defendant RFI or otherwise.
 

 On 8 January 2015, while Mr. Smith was a passenger in Mr. Charlton's car, Mr. Charlton struck Ms. Lewis as she was crossing a public street. Ms. Lewis later died as a result of the accident.
 

 Plaintiff filed a wrongful death action against both Defendant RFI and Mr. Charlton,
 
 *161
 
 alleging negligence in the death of Ms. Lewis. Defendant RFI moved for summary judgment. After a hearing on the matter, the trial court granted the motion with respect to Plaintiff's wrongful death claim,
 
 [2]
 
 holding that Mr. Charlton was an independent contractor of Defendant RFI and, therefore, Defendant RFI was not liable under
 
 respondeat superior
 
 .
 

 Plaintiff appeals.
 

 *412
 
 II. Appellate Jurisdiction
 

 Plaintiff is appealing from an interlocutory order which does not contain a Rule 54(b) certification. Therefore, Plaintiff's appeal is premature
 
 unless
 
 the order affects a substantial right.
 
 See
 

 Travco Hotels v. Piedmont Natural Gas Co.,
 

 332 N.C. 288
 
 , 291-92,
 
 420 S.E.2d 426
 
 , 428 (1992). Following the reasoning of our Supreme Court in
 
 Bernick v. Jurden
 
 , we conclude that the order, indeed, does affect a substantial right: "[W]e hold that because of the possibility of inconsistent verdicts in separate trials, the order allowing summary judgment for fewer than all the defendants in the case before us affects a substantial right."
 
 Bernick v. Jurden
 
 ,
 
 306 N.C. 435
 
 , 439,
 
 293 S.E.2d 405
 
 , 409 (1982).
 

 III. Analysis
 

 Plaintiff challenges the trial court's decision granting summary judgment in favor of Defendant RFI, in which the trial court held that Defendant RFI was
 
 not
 
 vicariously liable under
 
 respondeat superior
 
 . We review the trial court's summary judgment decision
 
 de novo
 
 , to determine whether, in the light most favorable to the non-moving party, the full record shows a genuine issue as to any material fact.
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 523-24,
 
 649 S.E.2d 382
 
 , 385 (2007). Specifically, we consider (1) whether the agency relationship between Mr. Charlton and Defendant RFI was sufficiently akin to an employer-employee relationship such that
 
 respondeat superior
 
 would apply and (2) if so, whether Mr. Charlton was acting within the scope of that relationship at the time of the accident.
 

 A. Nature of Agency Relationship
 

 Under the doctrine of
 
 respondeat superior
 
 , a principal may be held vicariously liable for the torts of his agent. Our Supreme Court has held as a general rule that
 
 respondeat superior
 
 applies if the agent's relationship with his principal is akin to an employee rather than that of an independent contractor.
 
 See
 

 Cooper v. Asheville Citizen-Times Pub. Co.
 
 ,
 
 258 N.C. 578
 
 , 586-87,
 
 129 S.E.2d 107
 
 , 113-14 (1963). Our task, here, is
 
 not
 
 to determine whether Defendant RFI should be treated as Mr. Charlton's employer for payroll tax purposes or in determining the applicability of the Workers Compensation Act. Rather, our task is to determine whether Defendant RFI should be treated as Mr. Charlton's employer for purposes of holding Defendant RFI vicariously liable for the torts committed by Mr. Charlton.
 

 Our Supreme Court instructs that whether an agent is akin to an employee or is akin to an independent contractor "depends on the
 
 degree
 

 *413
 

 of control
 
 retained by the principal over the details of the work as it is being performed [by the agent]."
 
 Vaughn v. N.C. Dep't of Human Res.
 
 ,
 
 296 N.C. 683
 
 , 686,
 
 252 S.E.2d 792
 
 , 795 (1979) (emphasis added);
 
 see also
 

 Gammons v. N.C. Dep't of Human Res.
 
 ,
 
 344 N.C. 51
 
 , 56-7,
 
 472 S.E.2d 722
 
 , 725-26 (1996). One acts as an independent contractor where he is not accountable to his employer as to
 
 the manner
 
 in which he performs his work, but is only accountable "as to
 
 the result
 
 of his work."
 
 Cooper
 
 ,
 
 258 N.C. at 588
 
 ,
 
 129 S.E.2d at 114
 
 (emphasis added).
 

 Our Supreme Court instructs that the "vital test" in classifying whether a worker acts as an employee does not depend on whether his principal actually controls his work but whether his principal "
 
 has retained the right of control or
 

 superintendence
 
 over the contractor or employee as to details" of the performance of his work.
 
 Hayes v. Bd. of Trs. of Elon Coll.
 
 ,
 
 224 N.C. 11
 
 , 15,
 
 29 S.E.2d 137
 
 , 140 (1944) (emphasis added). "[I]t is immaterial whether [the principal] actually exercises [his right of control]," so long as he
 
 *162
 
 has retained the right to do so.
 
 Cooper
 
 ,
 
 258 N.C. at 587
 
 ,
 
 129 S.E.2d at
 
 113 ;
 
 see also
 

 Gammons
 
 ,
 
 344 N.C. at 57
 
 ,
 
 472 S.E.2d at 726
 
 ("The controlling principal is that vicarious liability arises from
 
 the right
 
 of supervision and control." (emphasis added)).
 

 And our Supreme Court instructs that an independent contractor may still be deemed an employee, for purposes of
 
 respondent superior
 
 , as to
 
 some of the work
 
 performed by him, if that principal exercises a sufficient degree of control as to
 
 that portion of the work
 
 .
 
 [3]
 

 In conclusion, our Supreme Court's jurisprudence suggests that we are to determine the extent that Defendant RFI had the right to control Mr. Charlton's work with respect to Mr. Charlton's care of Mr. Smith.
 

 Whether vicarious liability applies in a given agency relationship is "a mixed question of fact and law."
 
 Beach v. McLean
 
 ,
 
 219 N.C. 521
 
 , 525,
 
 14 S.E.2d 515
 
 , 518 (1941). But where the facts are essentially established, then the issue is purely a question of law.
 

 Id.
 

 As we have held:
 

 *414
 
 Where the facts are undisputed or the evidence is susceptible of only a single inference and a single conclusion, it is a question of law for the court whether one is an employee or an independent contractor, but it is only where a single inference can reasonably be drawn from the evidence that the question of whether one is an employee or an independent contractor becomes one of law for the court.
 

 Little v. Poole
 
 ,
 
 11 N.C. App. 597
 
 , 600,
 
 182 S.E.2d 206
 
 , 208 (1971).
 

 We have reviewed the contract between Mr. Charlton and Defendant RFI (the "Contract") and the other evidence in the record. For the reasons stated below, we conclude that Mr. Charlton was an "employee" of Defendant RFI in his care of Mr. Smith for purposes of
 
 respondeat superior
 
 .
 
 [4]
 
 In reviewing the evidence that was before the trial court at summary judgment, we are guided by the cases cited above and by the eight factors considered by our Supreme Court in
 
 Hayes v. Board of Trustees of Elon College
 
 in determining whether one acts as an employee or as an independent contractor; namely, whether:
 

 [t]he person employed
 

 (a) is engaged in an independent business, calling, or occupation;
 

 (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work;
 

 (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis;
 

 (d) is not subject to discharge because he adopts one method of doing the work rather than another;
 

 (e) is not in the regular employ of the other contracting party;
 

 (f) is free to use such assistants as he may think proper;
 

 (g) has full control over such assistants; and
 

 (h) selects his own time.
 

 Hayes
 
 ,
 
 224 N.C. at 16
 
 ,
 
 29 S.E.2d at 140
 
 .
 

 *415
 
 We are further guided by our Court's opinion in
 
 Rhoney v. Fele
 
 , in which we analyzed
 
 *163
 
 whether a registered nurse was an employee of a nurse staffing agency at the time the nurse was involved in a fatal car accident.
 
 Rhoney v. Fele
 
 ,
 
 134 N.C. App. 614
 
 ,
 
 518 S.E.2d 536
 
 (1999). In
 
 Rhoney
 
 , the staffing agency recruited nurses to work at medical facilities short-term.
 
 Rhoney
 
 ,
 
 134 N.C. App. at 615
 
 ,
 
 518 S.E.2d at 538
 
 . If a facility needed a nurse for a particular shift, it would call the agency who would provide a nurse from the agency's pool.
 

 Id.
 

 On one occasion, the agency contacted the defendant nurse who agreed to work a shift at a particular hospital.
 

 Id.
 

 While driving to the hospital, the nurse was involved in an automobile accident which killed an individual.
 

 Id.
 

 The deceased's estate brought suit against both the nurse and the agency.
 

 Id.
 

 Relying on many of the Supreme Court's opinions cited above, our Court held that the nurse was an independent contractor.
 

 Id.
 

 at 618-19
 
 ,
 
 518 S.E.2d at 540
 
 . In the analysis, our Court cited a number of factors which supported a finding that the nurse was an independent contractor: (1) as a registered nurse, he was engaged in an independent profession; (2) he was free to provide nursing services to others outside his arrangement with the agency; (3) he exercised his duties at the assigned hospital, free from supervision from the agency; (4) his work was sporadic, rather than regular; (5) he was free to reject job assignments offered by the agency; and (6) the agency did not provide him with valuable equipment.
 

 Id.
 

 Our Court also cited factors which supported a finding that the nurse was an employee: (1) he was paid an hourly rate, rather than a lump sum for a particular assignment; (2) he was not free to select his assistants; (3) he was not able to choose unilaterally when he would perform his assigned tasks; (4) the agency was paid directly by the hospital for his services, who in turn would pay him; (5) the agency could terminate its relationship with him at any time; and (6) the agency provided a work packet and directions to the site for each assignment.
 

 Id.
 

 Our Court weighed the factors, "bearing in mind the admonition of
 
 Gordon
 
 and
 
 Hayes
 
 that the key factor is 'control,' " and concluded that the nurse was an independent contractor:
 

 These factors demonstrate that while [the agency] exercised control over extraneous aspects of [the nurse's] work, such as dates and times when work was offered and collection of his salary, [the agency] exercised no control over [the nurse's] nursing, the function for which hospitals sought him. To the contrary, [the nurse] was a free
 
 *416
 
 agent who could and did maintain similar arrangements with other suppliers of medical personnel .... Once [he] accepted work proposed by [the agency], [the nurse] was not under any control by [the agency] while working .... Thus, [the agency's] role was similar to that of a broker or middleman.
 

 Id.
 

 The facts in the present case are
 
 similar
 
 to the facts of
 
 Rhoney
 
 , but they are not "on all fours." Bearing in mind that the key factor is "control," for the reasons stated below, we conclude that Defendant RFI exerted much more control over Mr. Charlton than the agency exerted over the nurse in
 
 Rhoney
 
 . Specifically, the evidence shows that while Mr. Charlton was experienced in providing caregiving services to disabled clients, Defendant RFI was more than just a broker or middleman who placed caregivers with such clients.
 

 According to the Contract, Defendant RFI had the right to monitor and supervise Mr. Charlton in his work and to exercise some control over
 
 the manner
 
 in which Mr. Charlton provided his caregiving services. The Contract suggests that Mr. Charlton was required to provide caregiving services to whichever clients Defendant RFI decided to place with him and that Defendant RFI had the right to control and plan the type of caregiving services which Mr. Charlton provided to Mr. Smith:
 

 [Mr. Charlton shall] provide all services to each placed client described in the contact [sic] in accordance with the approved habilitation plan for each client, as such plan may change from time to time. [Mr. Charlton shall] notify [the qualified professional supervising him] when the schedule of services changes for any reason. [Mr. Charlton
 
 *164
 
 shall] participate in the review and changing of the plan as needed to meet the needs of the client. [Mr. Charlton shall] not provide services for payment that [Defendant RFI] is not approved to provide.
 

 Further, Mr. Charlton was required to participate in consultations with Defendant RFI regarding his care of clients. Mr. Charlton was not allowed to use restraints on a client who was acting unruly; he could only use "restrictive interventions" as approved by Defendant RFI, and he was required to notify Defendant RFI if he determined in his judgment that it was necessary to use emergency rights restrictions. Defendant RFI even controlled the manner in which Mr. Charlton drove his vehicle when transporting clients, limiting his speed to five miles per hour below the
 
 *417
 
 speed limit. We note, though, that there was evidence of an independent contractor relationship; for example, Mr. Charlton was free to hire others to help him carry out his caregiving duties.
 

 According to their Contract, Defendant RFI controlled Mr. Charlton's ability to accept clients on his own; that is, Mr. Charlton was generally required to work with only Defendant RFI clients. Specifically, the Contract provided that Mr. Charlton shall "not accept clients from another agency while housing clients from [Defendant RFI]." The evidence shows that Mr. Charlton did house clients of Defendant RFI and did not work with clients outside of those assigned to him by Defendant RFI.
 

 Also, unlike the nurse in
 
 Rhoney
 
 whose work with the agency "was sporadic rather than regular,"
 
 Rhoney
 
 ,
 
 134 N.C. App. at 619
 
 ,
 
 518 S.E.2d at 540
 
 , the evidence here shows that Mr. Charlton's work with Mr. Smith was regular. He worked forty (40) hours each week, a typical full work week, providing direct caregiving services to Mr. Smith. It is true that Defendant RFI did not have absolute control over the specific hours Mr. Charlton had to work each week.
 
 See
 

 Youngblood v. N. State Ford Truck Sales
 
 ,
 
 321 N.C. 380
 
 , 385,
 
 364 S.E.2d 433
 
 , 438 (1988) (recognizing that a requirement that a worker perform his work during a set time is indicative of an employer-employee relationship). But there was evidence that Mr. Charlton could not unilaterally choose when to provide his forty (40) hours of service either, but that he needed to do so to fit the needs of Mr. Smith, and that he generally worked with Mr. Smith during regular day-time working hours.
 

 According to their Contract, Mr. Charlton was paid hourly, rather than by the job, a strong indication of an employer-employee relationship.
 
 See
 

 Id.
 
 at 384,
 
 364 S.E.2d at 437-38
 
 (stating that "payment by a unit of time, such as an hour, day, or week, is strong evidence that [the worker] is an employee").
 

 Regarding the transportation services Mr. Charlton provided to Mr. Smith, we note that Defendant RFI did not provide Mr. Charlton with a vehicle to transport clients, a factor which suggests an independent contractor relationship. However, there were other factors which suggest an employment relationship, including that (1) Mr. Charlton was required to drive clients to certain events as requested by the client and as otherwise required by the plan of services that Defendant RFI required Mr. Charlton to provide; (2) Defendant RFI had the right to inspect Mr. Charlton's vehicle that he used to transport clients; and (3) Defendant RFI controlled the manner in which Mr. Charlton operated
 
 *418
 
 his vehicle, for instance, requiring that he not drive faster than five miles per hour below the speed limit.
 

 Our Supreme Court has held that "[t]he right to fire is one of the most effective means of control" and that "[a]n independent contractor is subject to discharge only for cause and not because he adopts one method of work over another[,]" whereas "[a]n employee, on the other hand, may be discharged without cause at any time."
 
 Youngblood
 
 ,
 
 321 N.C. at 385
 
 ,
 
 364 S.E.2d at 438
 
 . Here, Defendant RFI did not have the absolute right to terminate the Contract without cause, but the Contract did provide that Defendant RFI had the right to terminate the Contract "immediately without notice" if it "reasonably determines that the life, health, safety or property of the client is threatened or at risk." Implicit in this provision is the right of Defendant RFI to terminate the Contract if Mr. Charlton provided caregiving services in a manner which violates the Contract but which otherwise complies with law.
 

 *165
 
 Though not controlling, we are persuaded by guidance provided by the U.S. Department of Labor, Wage and Hour Division. Specifically, on 13 July 2018, the Department issued a bulletin to guide whether to treat "caregiver registries" as employers of the caregiver.
 
 [5]
 
 For instance, the Bulletin informs that where a registry merely conducts more than just basic background checks, but rather conducts additional subjective screening, an employer-employee relationship is indicated. Here, the Contract suggests that Defendant RFI engages in subjective screening beyond basic background checks in placing caregivers with clients based on their respective "culture, age, gender, sexual orientation, spiritual beliefs, socioeconomic status and language" expecting the caregiver to "hold[ ] the same values [of inclusivity]."
 

 The Bulletin provides that where the client controls the hiring/firing of the caregiver, an independent contractor relationship is indicated. But where the registry plays a more active role and can fire a caregiver for not meeting certain standards, an employer-employee relationship is indicated. Here, Defendant RFI does have some control to terminate Mr. Charlton.
 

 The Bulletin provides that a registry which exercises "control over the caregiver's work schedules and assignments may indicate that the
 
 *419
 
 registry is an employer[.]" Here, Defendant RFI did have the right to exercise control over assignments and the number of hours Mr. Charlton was to work.
 

 The Bulletin states that for the caregiver to be considered an independent contractor, the registry may not "instruct caregivers how to provide caregiving services, monitor or supervise caregivers in clients' homes, or evaluate caregivers' performance." And further, "[c]ontrol over the caregiver services indicates that the registry is an employer of the caregiver." Here, though, as outlined above, Defendant RFI had control over how Mr. Charlton provided care.
 

 The Bulletin states that a registry, in an independent contractor relationship, "does not determine a caregiver's rate of pay." The Bulletin recognizes that the registry is not deemed to set pay where Medicaid or another government program determines the hourly rate. The evidence, here, suggests that Mr. Charlton's pay was based largely on the rate allowed by the government, and therefore, is indicative of an independent contractor relationship. However, the Bulletin also recognizes that where the registry makes money for each hour worked by the caregiver, rather than simply from an upfront fee for making the placement, the registry acts like an employer, as is the case here. Also, the Bulletin states that where the registry pays the caregiver directly, the registry acts as an employer, as is the case here.
 

 The Bulletin provides that a registry acts as an employer when it tracks and verifies the number of hours worked by the caregiver, which is again the case here.
 

 The Bulletin provides that a registry that provides equipment and supplies to a caregiver acts as an employee. However, here, this factor cuts against an employer-employee relationship.
 

 Finally, the Bulletin states that "[c]alling a caregiver an 'independent contractor' or issuing him or her an IRS 1099 form," as Defendant RFI does here, "does not preclude the caregiver from being an employee [under the Fair Labor Standards Act.]"
 

 In conclusion, there are factors which suggest an employer-employee relationship, for purposes of
 
 respondeat superior
 
 , and there are factors which suggest an independent contractor relationship. However, as stated above, Defendant RFI acted as more than just a passive middleman who placed Mr. Charlton with clients: Defendant RFI retained the right to prescribe the type of services and to regulate the manner in which they were provided; and Defendant RFI retained the right
 
 *420
 
 to supervise and monitor Mr. Charlton as he provided these services. Therefore, we conclude that Defendant RFI could be held vicariously liable for the torts of Mr. Charlton that he might have committed
 
 *166
 
 while providing services to clients of Defendant RFI under their Contract.
 
 [6]
 

 B. Course of the Agency Relationship
 

 Our conclusion that Mr. Charlton was, as a matter of law, an employee of Defendant RFI for the purposes of
 
 respondeat superior
 
 does not fully answer whether
 
 respondeat superior
 
 applies in this particular case. Rather, whether, as a matter of law, Mr. Charlton was acting in the scope of his employment with Defendant RFI
 
 at the time of the accident
 
 is not an issue that either party has raised in this appeal. The trial court never reached this issue, having concluded that Mr. Charlton was an independent contractor. And neither party briefed this issue in this appeal. Therefore, we decline to consider the issue in this appeal.
 

 IV. Conclusion
 

 We conclude that Defendant RFI was not entitled to summary judgment on the issue of its vicarious liability for Mr. Charlton's alleged negligence. Defendant RFI, per the terms of the Contract, had the authority to exercise sufficient control over Mr. Charlton in his performance of caregiving services to deem Mr. Charlton an employee for purposes of
 
 respondeat superior
 
 . We cannot say, however, that Mr. Charlton was entitled to summary judgment on the issue of vicarious liability: Whether Mr. Charlton was acting within the scope of his contract with Defendant RFI at the time of the accident is not an issue that is before us. We, therefore, vacate the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.
 

 VACATED AND REMANDED.
 

 Judges ELMORE and DAVIS concur.
 

 [1]
 

 A pseudonym is used to protect the identity of the client and to comply with any regulations that may apply to services provided by Defendant RFI.
 

 [2]
 

 Plaintiff also brought claims against Defendant RFI for negligent hiring of and negligent entrustment to Mr. Charlton, but those claims were not included in the partial summary judgment and are not before this Court.
 

 [3]
 

 See, e.g.,
 

 State v. Wilson
 
 ,
 
 362 N.C. 162
 
 , 165,
 
 655 S.E.2d 359
 
 , 361 (2008) (recognizing that "an independent contractor can, in certain respects, be an [employee] depending upon the degree of control exercised by the principal");
 
 Holcomb v. Colonial Assoc., L.L.C.
 
 ,
 
 358 N.C. 501
 
 , 509-10,
 
 597 S.E.2d 710
 
 , 716 (2004) (recognizing that a landlord who hired an independent contractor to manage its residential property may still be vicariously liable for dogs allowed by the contractor where the landlord had authority to actively control the presence of pets);
 
 Gammons,
 

 344 N.C. at 63
 
 ,
 
 472 S.E.2d at 729
 
 (holding that "regarding the provision of child protective services, there exists a sufficient agency relationship between [the State] and [the County] such that the doctrine of
 
 respondeat superior
 
 is implicated, [and therefore the State] may be liable [for negligent acts of the County] while acting within the scope of their obligation [to provide child protective services]").
 

 [4]
 

 We note that the Contract does state that Mr. Charlton was not an employee of Defendant RFI for purposes of benefits, payroll taxes, or workers compensation. But the names assigned by the parties are not conclusive as to whether Defendant RFI had the right to control the manner in which Mr. Charlton performed his caregiver duties, thereby exposing Defendant RFI to vicarious liability for the negligent acts of Mr. Charlton in the performance of his caregiving duties on Defendant RFI's behalf.
 

 [5]
 

 Wage and Hour Division,
 
 Field Assistance Bulletin No. 2018-4
 

 : Determining whether nurse or caregiver registries are employers of the caregiver
 
 , U.S. Dep't of Labor (13 July 2018) https://www.dol.gov/whd/FieldBulletins/fab2018_4.htm.
 

 [6]
 

 Defendant RFI argues that it would be inappropriate for partial summary judgment to be entered for Plaintiff on the agency issue, as Plaintiff never moved for summary judgment. However, Rule 56 allows for summary judgment to be entered against the moving party where appropriate. N.C. R. Civ. P. 56.